[Crim. No. 11866. Fourth Dist., Div. One. Nov. 3, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID EUGENE KENT, Defendant and Appellant.

208

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Handy Horiye, Deputy State Public Defender, and Joyce Sweet for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—David Eugene Kent appeals a judgment of conviction on counts of robbery (Pen. Code, § 211), burglary (Pen. Code, § 459), assault with a deadly weapon (Pen. Code, § 245, subd. (a)), and petty theft (Pen. Code, § 484). He contends that various errors at his trial mandate reversal of his convictions. We conclude the errors committed by the trial court were not prejudicial and affirm the judgment. (See Cal. Const., art. VI, § 13; *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

*Factual and Procedural History*

The events giving rise to this case occurred on February 14 and 15, 1980. Kent was identified as one of two men who solicited tree-trimming work at the home of Juliet and Adeline Buckalew in La Mesa. Before beginning the trimming, Kent demanded entrance to the Buckalew's garage in order to borrow a chain saw. Mrs. Buckalew finally

agreed and admitted him. Kent left with the chain saw and failed to return. The Buckalews' trees were never trimmed.

Kent was also identified by Frank Schuch as the individual who sought tree-trimming work at his La Mesa home the following evening. When Schuch declined, Kent and another man departed in the direction of the home of Florence Archer.

Eighty-six-year-old Mrs. Archer testified Kent and a companion appeared at her door on the evening of February 15th. She said she recalled his name because he had solicited work from her on three previous occasions. When she told him she had no work available this time, Kent asked to use the phone. The other man also entered the house. After the phone call, Kent asked to use the bathroom. While he was in the bathroom, Mrs. Archer checked her purse which was located near the phone and noticed several $1 bills missing. When Kent emerged from the bathroom, she questioned him about the missing money. He responded by striking her in the face, brandishing a knife, and demanding more money. Mrs. Archer then observed the other man emerge from her bedroom. He appeared to be carrying something. Kent told Mrs. Archer, "You don't know me," to which she replied, "I certainly do. You're David Kent." Both men then left the house. Mrs. Archer subsequently discovered several other items missing.

At trial, two alibi witnesses testified for Kent to corroborate his whereabouts on the days in question. He also introduced evidence tending to show that Mrs. Archer had mistaken his cousin, Monty Roberts, Jr., for him in her identification of the robber. The jury returned verdicts of guilty on five of the six counts.[1] Kent was sentenced to seven years in prison.

*Discussion*

■ Kent initially claims he was denied his right to a fair trial when he was compelled to wear jail clothing during trial. The record reveals he appeared on one day of trial[2] wearing blue denims and a green T-shirt. Defense counsel conveyed Kent's objection to standing trial in

---

[1]The sixth count involved the severing of a telephone cord (see Pen. Code, § 591) on which the jury could not agree. That count was dismissed by the trial court after the other verdicts were returned.

[2]The Attorney General's brief asserts Kent only wore the challenged clothing on that one day. Kent does not dispute this assertion, but notes that it is without support in the record.

the clothing, although the exact nature of that objection is unclear.[3] The clothing apparently did not bear any distinctive markings. The court concluded Kent's garb was not reasonably identifiable as jail clothing and would not prejudice Kent in the eyes of the jury.

In *Estelle* v. *Williams* (1976) 425 U.S. 501, 512 [48 L.Ed.2d 126, 135, 96 S.Ct. 1691, 1697], the United States Supreme Court held that "the State cannot ... compel an accused to stand trial before a jury while dressed in identifiable prison clothes ...." The identifiability of the clothing is a question of fact which may depend on the nature of the apparel as well as surrounding circumstances. (See *Gaito* v. *Brierly* (3d Cir. 1973) 485 F.2d 86, 89-90.)

The court's decision that the clothing at issue was not readily identifiable as jail-issue is supported by substantial evidence. In the absence of other factors (e.g., testimony indicating that other prisoners viewed by prospective jurors were similarly clothed), the lack of identifiable markings on the apparel provides sufficient foundation for a conclusion that the wearing of the clothes did not prejudice Kent.

■ As a second contention, Kent argues he was entitled to a *sua sponte*[4] instruction that the jury must unanimously agree on every fact necessary to constitute the charged crime. He specifically points to the fact that evidence introduced at trial suggested that four different items may have been taken during the robbery of Mrs. Archer. He contends all jurors must agree on at least one of the items taken in order to sustain his conviction.

It is a fundamental principle of our criminal justice system that the prosecution must prove beyond a reasonable doubt "every fact necessary

---

[3]Kent personally objected to the condition of his trousers, noting the crotch was ripped. The judge concluded that since defendant would remain seated throughout the trial, the condition of the trousers would not be observed by the jury.

[4]Kent attempts to characterize the proffered instruction as having been requested at trial by pointing to his Penal Code section 1118.1 motion for acquittal on the ground that there was no evidence of force or fear involved in the taking of any item. (See fn. 6, *post*.) That issue is clearly distinct from the question of whether the jurors must unanimously agree on the act which constitutes one element of the crime. Whether the proffered unanimity instruction constitutes a "general principle of law" "commonly or closely and openly connected with the facts of the case," thus requiring a *sua sponte* instruction, is an issue we do not reach. (See *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 337 P.2d 502]; *People* v. *Flannel* (1979) 25 Cal.3d 668, 681 [160 Cal.Rptr. 83, 603 P.2d 1].)

to constitute the crime with which [the defendant] is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068, 1073.) It is also clear that where evidence presented to the jury indicates more than one act which may constitute the charged offense, the jury must be instructed that it must unanimously agree on the specific criminal act in order to convict the defendant. (*People v. Madden* (1981) 116 Cal.App.3d 212, 218-219 [171 Cal.Rptr. 897]; *People v. McNeill* (1980) 112 Cal.App.3d 330, 335-336 [169 Cal.Rptr. 313].) We can find no authority, however, in support of Kent's proposition that where a crime has more than one element, the jury must unanimously agree on the act necessary to constitute that element. All of the cases cited by Kent involve situations where the multiple acts which were proved in themselves constituted *separate chargeable offenses,* not just alternate ways of proving a necessary element of the *same offense.*[5] (See, e.g., *People v. Madden, supra,* 116 Cal.App.3d 212; *People v. Alva* (1979) 90 Cal.App.3d 418 [153 Cal.Rptr. 644].)

Kent's argument is nonetheless an interesting one. If the *Winship* standard is to have substantive meaning, Kent's guilt as to each element of the crime must be proved beyond a reasonable doubt. If the facts of a given case are susceptible of an interpretation that no items of property were taken, Kent may well be entitled to an instruction that the jury must agree on at least one item.

We need not decide the issue in this case, however, since any error by the trial court in failing to give such an instruction was clearly harmless in light of the facts. Mrs. Archer testified that she discovered several dollar bills missing from her purse. When she confronted Kent with this fact, he struck her in the face and demanded more money. This constituted a virtual admission of guilt by Kent.[6]

---

[5]Contrary to Kent's assertion, we do not read *People v. Bauer* (1969) 1 Cal.3d 368, 376-377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], to stand for the proposition that the taking of several items from one victim during the course of a robbery episode is sufficient to sustain multiple robbery convictions. The *Bauer* court's indication that Penal Code section 654 would prohibit multiple punishment in such a situation does not necessarily imply that multiple convictions would be proper. Moreover, *Bauer* involved the propriety of punishment for one count of robbery and one count of a *separate crime* (auto theft), not multiple counts of robbery.

[6]We categorically reject Kent's contention that the jury could have reasonably concluded that the taking of the money constituted a mere larceny and that the application of force or fear occurred after the larceny was completed. As the Supreme Court noted in *People v. Anderson* (1966) 64 Cal.2d 633, 638 [51 Cal.Rptr. 238, 414 P.2d 366], "In this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important

Mrs. Archer's testimony was uncontradicted and the jury obviously had to believe her in order to convict on three of the five counts. Under these circumstances, the failure to instruct as to jury unanimity was harmless beyond a reasonable doubt.[7] (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710].)

■ Kent next contends he was prejudiced by the admission of evidence regarding two prior felony convictions. (See, generally *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].) Mrs. Archer testified she recognized defendant because he had come to her house on several previous occasions, including once during the "early part of 1979." Kent sought to impeach Mrs. Archer's statement by introducing third party testimony to the effect that Kent was incarcerated until April or May of 1979. ■ ■ ■ The trial court relied on Evidence Code section 352 in excluding the proffered testimony, concluding it would unduly prejudice Kent.[8] ■ Kent insisted on putting the evidence of his incarceration before the jury, however, and decided to take the stand for that purpose against his counsel's advice.[9] The court indicated he could not stop Kent from testifying, but warned once he took the stand, the prosecutor could "tear him apart" with regard to his prior felony convictions.

Kent nevertheless testified in substance that he was incarcerated in county jail from October 1978 to May 1979. On cross-examination, the

---

in the commission of the crime as gaining possession of the property. [Citations.] [¶] Accordingly, if one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence, as defendant did here, the crime of robbery has been committed."

[7]We assume without deciding the question that a failure to give an instruction mandated by *Winship*'s reasonable doubt standard would constitute federal constitutional error and thus be evaluated under the *Chapman* standard.

[8]Although the issue is not raised by Kent, we question the propriety of the trial court's exclusion of defense-proffered evidence based on a section 352 determination that the admission of the evidence would unduly prejudice Kent. We note that had the court allowed the third party testimony regarding Kent's prior incarceration, the compound *Beagle* error which subsequently occurred would have been avoided.

Section 352 is designed primarily to protect a party *against whom* evidence is admitted from being unduly prejudiced by evidence of little legitimate probative value. Where a proponent of evidence is himself potentially prejudiced by the evidence, and assuming at least limited relevance, the balancing of the probative value against the prejudicial effect is best left to that proponent who stands to directly benefit or suffer from the decision.

[9]We are unable to understand why the trial court or defense counsel did not suggest that defendant offer to stipulate that he was incarcerated until April 24, 1979. (Cf. *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826].)

prosecutor inquired whether Kent had ever been convicted of a theft-related felony.[10] Kent replied that he had. The prosecutor then asked whether the incarceration was due to a parole revocation. Kent again responded affirmatively, although he asserted the revocation was not based on the commission of a subsequent crime.

The prosecutor sought and received permission from the trial court to inquire into the nature of the theft-related offense and the basis for the parole revocation. Defense counsel objected on the ground of Evidence Code section 352, but the objection was overruled. It was then revealed that Kent had suffered a prior robbery conviction in 1973 and while on parole for that offense had suffered a felony conviction for hit-and-run driving which resulted in parole revocation and additional state prison time.

The only asserted basis for admission of the evidence concerning the nature of defendant's prior convictions was the impeachment of Kent's testimony.[11] (See Evid. Code, § 788; *People* v. *Beagle, supra,* 6 Cal.3d 441.) Because the prosecutor had in his possession records which indicated Kent was incarcerated in county jail from October 23, 1978 through April 24, 1979, he had no reasonable basis to question defendant's credibility.[12] The obvious purpose for the prosecutor's cross-examination was to put before the jury highly prejudicial evidence concerning defendant's past convictions. (See *People* v. *Rist* (1976) 16 Cal.3d 211, 220 [127 Cal.Rptr. 457, 545 P.2d 833]; cf. *People* v. *Hall, supra,* 28 Cal.3d 143.) The court's refusal to exercise its discretion under Evidence Code section 352 therefore constitutes error.

Moreover, the court's later decision to allow the prosecutor to inquire into the nature of the prior theft-related conviction is directly contrary

---

[10]The framing of this initial question was an apparent attempt to comply with the approach suggested in *People* v. *Moultrie* (1979) 99 Cal.App.3d 77, 87-88 [160 Cal.Rptr. 51], and avoid the problems noted in *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19].

[11]Although Kent again does not raise the issue, we note the trial court apparently compounded its error in allowing the cross-examination by failing to instruct the jury pursuant to CALJIC No. 2.23 that evidence of Kent's prior felony convictions was admitted solely for the purpose of challenging the credibility of his testimony and not as substantive evidence of guilt.

[12]If the trial court was concerned because Kent had incorrectly stated that his incarceration lasted until May 1979, he could have allowed a limited cross-examination of Kent for the purpose of establishing the correct release date.

to the Supreme Court's decision in *People v. Fries, supra*, 24 Cal.3d 222. *Fries* also involved a prior robbery conviction which the prosecution sought to introduce to impeach the testimony of a defendant charged with robbery. The court held that the trial judge abused his discretion under Evidence Code section 352 in refusing to exclude evidence of the prior robbery conviction because the defendant was currently charged with an identical crime. (*Id.*, at p. 233.) It reasoned that prejudice flowing from the jury's awareness of the prior conviction substantially outweighed the limited probative value regarding defendant's credibility. We find the instant case indistinguishable.

Having concluded there was error, we are now faced with the difficult determination of whether such error requires reversal of Kent's conviction. Our review is governed by article VI, section 13 of the California Constitution,[13] as interpreted in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. (See *People v. Rollo* (1977) 20 Cal.3d 109, 121 [141 Cal.Rptr. 177, 569 P.2d 771].) The *Watson* court held that a "'miscarriage of justice' should be declared' only when the [reviewing] court, 'after an examination of the entire cause including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.*, at p. 836.)

Applying this standard to the facts before us, we cannot say that a different result would be "reasonably probable" in the absence of the error. The error did not cause the jury to be denied whatever limited benefit the defendant's testimony may have provided. (Cf. *People v. Fries, supra*, 24 Cal.3d 222, 231.) In addition, the case against defendant was strong, including identification by four eyewitnesses. His automobile matched the description of that observed by the Buckalews. Kent's companion at the time of his arrest was identified by both Mrs. Archer and Mr. Buckalew as the second man involved in each incident. While there were discrepancies in the testimony of some of the prosecution's witnesses, they were largely insubstantial. One of Kent's two alibi witnesses was severely impeached, and his attempts to place the blame

---

[13]That section provides, in relevant part: "No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

for the incidents on his cousin, Monty Roberts, Jr., were unpersuasive.[14] We conclude *Watson* mandates Kent's conviction be affirmed. (See *People* v. *Rollo, supra*, 20 Cal.3d 109, 120-121; *People* v. *Betts* (1980) 110 Cal.App.3d 225, 231 [167 Cal.Rptr. 768].)

■■ Although admitting that no single error or omission meets the *Pope* standard, Kent asserts the sum total of his counsel's performance denied him effective assistance within the meaning of *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]. He notes counsel's failure to stipulate to the period of prior incarceration (see fn. 8, *ante*) and adequately contest the jail clothing issue (see pp. 211-212, *ante*). He additionally challenges counsel's decision to stipulate to probable cause for his arrest and counsel's failure to object during closing argument when the prosecutor tore his diagrams in half. With the exception of the failure to stipulate to the period of prior incarceration, each of the alleged errors appears to be a tactical choice which cannot be second-guessed by appellate courts. (See *People* v. *Pope, supra*, 23 Cal.3d at p. 424; *People* v. *Frierson* (1979) 25 Cal.3d 142, 166 [158 Cal.Rptr. 281, 599 P.2d 587].) And while we can discern no tactical justification for the failure to at least suggest a stipulation regarding the prior incarceration, counsel's failure to stipulate can in no way be said to have resulted in "the withdrawal of a crucial or potentially meritorious defense." (*People* v. *Pope, supra*, 23 Cal.3d at p. 425.)

As a final argument, Kent aggregates several assertions of error into a claim he was denied a constitutionally mandated fair trial. (See, e.g., *People* v. *Buffum* (1953) 40 Cal.2d 709, 726 [256 P.2d 317].) We agree one of the rulings was erroneous, but we do not find such error to be prejudicial.

Kent argues a prior consistent statement made by Mrs. Buckalew to an investigating police officer was improperly admitted. While we agree that none of the statutory predicates for admission of such a statement were met (see Evid. Code, § 791), the officer's testimony cannot reasonably be said to have prejudiced Kent.

Kent also says the court improperly refused to allow him to call certain witnesses to rebut charges impliedly made by the prosecutor that

---

[14]Three pictures of Monty Roberts, Jr., were admitted into evidence and viewed by the jury. Mrs. Archer was asked to observe the photographs, but responded that she had not mistaken Monty Roberts for Kent in her identification of the culprit.

two previous defense witnesses had been coached.[15] The "implied charges" made by the prosecutor occurred during the cross-examination of one of the prior witnesses. When several questions failed to yield any evidence regarding the alleged impropriety, the judge ordered the entire line of questioning stricken. Allowing defense rebuttal evidence on the point would have merely emphasized something which the jury was not to consider, and the court was well within its discretion in refusing to permit the additional testimony.

■ Kent next complains the court abused its discretion in refusing to allow a one-man showup of Monty Roberts, Sr., during Mrs. Archer's testimony. Archer had testified she recognized Kent because he had solicited work at her home on three previous occasions during the past two years. She also noted that she remembered seeing Kent as a small boy who came to her house with his father who was a tree-trimmer. Kent attempted to suggest that Mrs. Archer had mistaken defendant for his cousin, Monty Roberts, Jr. Defense counsel was permitted to introduce photographs of Monty Roberts, Jr., but Mrs. Archer stated that the man in the photos was not the man who robbed her. Counsel then sought permission to have Monty Roberts, Sr., appear in court to see if Mrs. Archer would identify him as the man who trimmed her trees 20 years earlier. At that point, the trial judge indicated that the matter was too collateral to permit additional evidence on the point and refused to allow the in-court showup. In view of the tangential relevance of the point and the remoteness in time of the 20-year-old incident, we conclude that the trial court did not abuse its discretion in excluding the evidence.[16] (See Evid. Code, § 352.)

Although the management of a criminal trial is indeed easier from this vantage point, we nevertheless are troubled by the errors, particularly those pertaining to *Beagle* and its progeny, which occurred here. However, applying the appropriate standards of prejudicial error, both individually and cumulatively (see *People* v. *Williams* (1971) 22 Cal. App.3d 34, 58 [99 Cal.Rptr. 103]), we have nonetheless concluded Kent's conviction must be affirmed.

---

[15]The prosecutor made reference to two courtroom observers and inquired of one of Kent's alibi witnesses whether the observers had left the courtroom to report to him the substance of a previous witness' testimony. (Witnesses had been excluded from the courtroom at defendant's request.) The alibi witness unequivocally denied any coaching by the observers. Kent sought to call the two courtroom observers to substantiate the witness' testimony as to the absence of coaching.

[16]The trial court did indicate that it would permit an in-court showup of Monty Roberts, Jr.

*Disposition*

Judgment affirmed.

Staniforth, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied November 23, 1981, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied January 7, 1982.