**Eddie M. SCARBOROUGH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–754.**

District of Columbia Court of Appeals.

Argued En Banc May 30, 1986.
Decided March 18, 1987.

Geoffrey D. Allen, Washington, D.C., appointed by the court, for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, Leonard E. Birdsong, and Gerald W. Heller, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Jennifer P. Lyman, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, filed an amicus curiae brief for appellant.

Before PRYOR, Chief Judge, and NEBEKER, MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS and STEADMAN, Associate Judges.

FERREN, Associate Judge:

In *Scarborough v. United States*, 496 A.2d 277 (D.C.1985) (per curiam), a division of this court affirmed appellant's conviction for receiving stolen property (felony), D.C. Code § 22-2205 (1981). The division premised its opinion on the second holding of *Barkley v. United States*, 455 A.2d 412, 415-16 (D.C.1983). Several months later, we granted appellant's petition for rehearing en banc and vacated the division opinion and judgment. *Scarborough v. United States*, 507 A.2d 141 (D.C.1986). Appellant argues that the trial court abused its discretion in denying his motion for a new trial. He cites the court's failure to instruct the jurors that, in order to convict under a single count of receiving two distinct classes of stolen property, they must unanimously agree on what class of items he unlawfully received. We agree that this omission of a special unanimity instruction violated appellant's sixth amendment rights. Consequently, we overrule the portion of *Barkley* that is inconsistent with our ruling here. Because, however, we also conclude that the error was harmless beyond a reasonable doubt, *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), we affirm appellant's conviction.

I.

Complainant, Bradford Callahan, maintained an automobile body shop in which he engaged in body and fender work as a hobby. On Saturday evening, November 21, 1982, Callahan locked up his shop for the weekend. When he returned Monday morning, he discovered that the locks had been cut off and that various tools and supplies had been stolen. He reported the theft to the police. He then went to see appellant, who worked as a mechanic in the neighborhood, to inquire about a car that appellant had wanted him to paint. Appellant advised Callahan that he planned to try painting the car himself, whereupon Callahan asked to see appellant's spray paint gun. Appellant showed him several spray guns, three of which Callahan recognized as his own. Two of the spray guns had Callahan's initials on them; he recognized the third by identifying certain replacement parts he had just installed. Callahan testified that he had paid $90 for one of the guns and between $125 and $175 apiece for the other two. He further stated that, because the retail value of similar spray guns had increased since he had bought his, the spray guns were currently

worth more than $100 each. Appellant told Callahan that he had purchased the three spray paint guns from a man who had come by the shop and done some work in the neighborhood. Callahan asked appellant to identify this man, and appellant agreed to help Callahan locate him. The search was unsuccessful; appellant returned the spray guns to Callahan.

A few days later, Callahan spoke to Detective Vacin of the Metropolitan Police Department and told him that he had recovered the spray guns from appellant. Callahan identified appellant from some police photographs, then accompanied Vacin to a nearby garage belonging to Ms. Mazel Smith, where appellant sometimes worked. Appellant stored some of his tools there and had exclusive use of the garage. There, Callahan found a grinder which he identified as his because it had a cracked handle and two cuts in the power cord. Callahan testified at trial that the grinder had a current value of at least $150.

At trial, appellant presented separate defenses as to each class of property stolen. He repeated his claim that he had purchased the spray guns in good faith from a man in the neighborhood. He asserted that he had received the grinder as a gift from his common law wife, Pensie Thraxton. She corroborated this account, testifying that the grinder recovered by the police looked like the one she had given appellant following her father's death in 1979. James Postell, a friend of appellant's and a member of the Metropolitan Police Department, testified that in 1982 he had damaged appellant's grinder by driving over the cord in his car. He also identified the grinder recovered by the police as the same one damaged by his car.

At the close of the evidence, the court discussed proposed instructions with counsel and announced its intention to give the standard unanimity instruction.[1] Appellant's counsel neither objected to the court's proposal nor requested a special instruction, and he later advised the court that he was "satisfied" with the instruc-tions. The court accordingly instructed the jury on the elements of the crime and added that "[i]n order to return a verdict, it is necessary that each juror agree to the verdict. Your verdicts must be unanimous."

Following the jury's verdict, appellant filed a motion for a new trial, asserting that the trial court had erred in failing to instruct the jury that it must unanimously agree on which items of Callahan's property appellant had feloniously received. Appellant argued that it would have been possible for the jury to convict under the court's instruction if, for example, six jurors had believed appellant guilty of receiving the spray guns but not the grinder while the other six believed him guilty of receiving the grinder but not the spray guns—a nonunanimous verdict as to any of the property. The court denied this motion, applying *Barkley*.

## II.

In arguing that the court abused its discretion in denying his new trial motion, appellant relies on the following line of cases: *Davis v. United States*, 448 A.2d 242, 244 (D.C.1982) (per curiam); *Hack v. United States*, 445 A.2d 634, 641 (D.C. 1982); *Hawkins v. United States*, 434 A.2d 446, 449 (D.C.1981); *Johnson v. United States*, 398 A.2d 354, 368–370 (D.C.1979). In *Hawkins*, for example, we said that the sixth amendment requirement for a unanimous verdict[2] requires that "[w]here one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they find the defendant guilty." 434 A.2d at 449 (citation omitted). Such an instruction is necessary to prevent the possibility that some jurors might vote to convict based solely on one incident while others vote to convict based solely on the other. *Id.* at 448–49. We have held, moreover, that the failure to give such a unanimity instruction in such circumstances can be "plain error of a constitutional mag-

---

1. Criminal Jury Instructions for the District of Columbia, No. 2.69 (3d ed. 1978).

2. *See also* Super.Ct.Crim.R. 31(a), which provides that "The verdict shall be unanimous."

nitude" requiring reversal. *Id.* at 449; *compare Davis*, 448 A.2d at 244 (plain error), *with Hack*, 445 A.2d at 641 (error harmless beyond reasonable doubt).

Appellant acknowledges that we have rejected a similar sixth amendment "unanimity" claim when the charge of stealing two distinct classes of property was based on a single incident. In *Barkley*, appellant was convicted of petit larceny for the theft of various items from complainant's apartment one Thanksgiving Day. Appellant raised separate defenses for these items. He conceded taking one, a stereo amplifier, but defended that taking by a claim of right. He denied participation in the theft of the other items, blaming his codefendant. 455 A.2d at 413–14. We rejected appellant's argument that these two classes of thefts were conceptually severable because of appellant's distinct defense theories. We said that the thefts and appellant's alleged participation

> are founded in just one set of factual circumstances not separated by time or by intervening incidents. The evidence as to each theory of liability is the same. There was but one offense based on a unitary event, rather than two separable and distinct offenses, as there were in *Hack*.

\*    \*    \*    \*    \*    \*

In the case at hand, the jury was instructed to return a unanimous verdict ... and there is no indication that they did not, in fact, agree unanimously as to what property appellant stole. However, whatever credence the jury may have accorded appellant's defenses, the jury was at least unanimous in finding that appellant took *some* of the complainant's property, having *some* value, without his consent and without right. These are the essential elements of the offense of petit larceny, D.C. Code 1981, § 22–2202, and under these circumstances involving a single uninterrupted event, we con-

clude that the unanimity requirement is satisfied.

*Id.* at 415–16.

In order to understand the problem in *Barkley*, it is important to examine the policy underlying the requirement for unanimous verdicts in criminal trials. The constitutional right to a unanimous jury verdict in federal criminal trials is a principle long assumed to be an indispensable feature of the sixth amendment right to trial by jury. *See, e.g., Johnson v. Louisiana*, 406 U.S. 356, 369–71, 92 S.Ct. 1620, 1637–38, 32 L.Ed.2d 152 (1972) (Powell, J., concurring); *Andres v. United States*, 333 U.S. 740, 748–49, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948); *Patton v. United States*, 281 U.S. 276, 288–90, 50 S.Ct. 253, 254–55, 74 L.Ed. 854 (1930). Although the Supreme Court has rejected the argument that unanimity is necessary in order to effectuate the requirement of proof beyond a reasonable doubt, *Johnson*, 406 U.S. at 360–63, 92 S.Ct. at 1623–25; *see Apodaca v. Oregon*, 406 U.S. 404, 411–12, 92 S.Ct. 1628, 1633–34, 32 L.Ed.2d 184 (1972), it acknowledged that the unanimous jury requirement may help effectuate the reasonable doubt standard. *Johnson*, 406 U.S. at 362,[3] 92 S.Ct. at 1624.

■ Since *Johnson* and *Apodaca*, a number of courts, including our own, have adopted the view that the unanimity requirement is linked to the reasonable doubt standard. *See, e.g., Johnson*, 398 A.2d at 369–70; *United States v. Gipson*, 553 F.2d 453, 457–60 & n. 7 (5th Cir.1977); *People v. Kent*, 125 Cal.App.3d 207, 212–13, 178 Cal. Rptr. 28, 31–32 (1981); *State v. Lomagro*, 113 Wis.2d 582, 591, 335 N.W.2d 583, 589 (1983); *see generally* Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson*, 91 HARV.L.REV. 499 (1977). Jury unanimity "ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense," *Lomagro*, 113 Wis.2d at 591, 335 N.W.2d at 589,

---

3. The requirement that the government prove each element of an offense beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), is "an essential of the due process guaranteed by the Fourteenth Amendment." *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979), *quoted in Dumas v. United States*, 483 A.2d 301, 305 (D.C.1984).

and "thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged," *Gipson,* 553 F.2d at 457–58. In sum, without jury agreement as to the specific act the defendant committed, the right to a unanimous jury verdict is meaningless. *Id.* at 458.

This unanimity requirement is applicable whenever there is evidence tending to show *legally* separate incidents (as in *Barkley* and in this case), not just factually separate incidents. If a special unanimity instruction is required when the evidence, under a single count, tends to show that the defendant received different items of stolen property at different times, *People v. Parsons,* 156 Cal.App.3d 1165, 1173–74, 203 Cal.Rptr. 412, 418 (1984); *see Davis,* 448 A.2d at 244; *Hack,* 445 A.2d at 641, there is no principled basis for saying that such an instruction is not required when a defendant presents separate defenses to a single count charging receipt of different items of stolen property at the same time. *See Barkley,* 455 A.2d at 417 (Ferren, J., dissenting). In either case, the issue under a single count is subdivided "into two distinct conceptual groupings." *Gipson,* 553 F.2d at 458. Therefore, unless there is a special unanimity instruction, there can be no assurance that the jury unanimously agreed "as to just what a defendant did." *Id.* at 457.

In short, the unanimity issue under a single count of an information or indictment does not turn only on whether separate criminal acts occurred at separate times (although in some cases it may); it turns, more fundamentally, on whether each act alleged under a single count was a separately cognizable incident—by reference to separate allegations and/or to separate defenses—whenever it occurred. Accordingly, the portion of our opinion to the contrary in *Barkley,* 455 A.2d at 415–16, is overruled.

### III.

Having determined that the failure to assure jury unanimity violated appellant's sixth amendment rights, we must reverse his conviction unless we can say that the error was harmless beyond a reasonable doubt. *Hack,* 445 A.2d at 641; *see Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986) (citations omitted). We are not limited to examining this question under plain error analysis. While it is true that counsel failed to object to the trial court's general unanimity instruction, he cannot be faulted for acquiescing in the trial court's approach. Given this court's decision in *Barkley,* both counsel and the trial court presumably concluded that a special unanimity instruction was not required. In any event, there is a strong likelihood (as evidenced by the trial court's reliance on *Barkley* in denying appellant's motion for new trial) that any objection to the trial court's unanimity instruction would have been fruitless. Given our own erroneous, but nonetheless binding, analysis in *Barkley,* therefore, it would be plainly unjust to penalize appellant for his failure to object at trial.

Properly framed, then, the question is whether, on this record, some jurors reasonably could have believed appellant had received the grinder from his common law wife before the burglary but disbelieved his story about purchasing the spray guns from a third party after the burglary, while other jurors reasonably could have believed appellant had bought the spray guns without knowing they were stolen but disbelieved his story about obtaining the grinder from his wife. If so, the verdict may not have been unanimous "as to just what [appellant] did," *Gipson,* 553 F.2d at 457, and, thus, the instructional error would not have been harmless beyond a reasonable doubt.

It is important to note at the outset that, according to the government's evidence, which appellant did not dispute, only one burglary occurred during which the spray guns and grinder were stolen. Appellant's defense as to the spray guns (assertedly purchased in good faith from a third party) implicitly acknowledged they had been taken during this burglary. His defense as to the grinder, however, was mistaken identity, premised on his receiving the allegedly

stolen grinder as a gift a long time before the burglary.

Easily, some jurors could have believed appellant's story about the grinder. Appellant credibly asserted that the grinder was his, and he put on corroborating testimony that this grinder was not one taken from complainant's garage. Those same jurors could have disbelieved his story that he purchased the spray guns from a third party. Thus, this group of jurors could have convicted by reference to the spray guns alone.

Another group of jurors could have believed appellant bought the spray guns in good faith from the actual thief (or from the thief's accomplice). Appellant gave credible testimony as to why the money he paid was a reasonable price under the circumstances; there is no compelling evidence he had to know he was purchasing them so cheaply that they must have been stolen. There is a serious question, however, whether jurors who believed appellant's spray gun story could also have reasonably disbelieved his story about the gift of a grinder and thus convicted appellant for receiving only a stolen grinder. To do so, the jurors would have had to believe appellant received the grinder knowing it was the product of a burglary while believing, nonetheless, that he had innocently purchased stolen spray guns. On this record, that combination of findings would be altogether speculative.

It is difficult to imagine how jurors reasonably could have believed appellant bought the spray guns in good faith without also believing his grinder story. If these jurors did not credit appellant's testimony that he had received the grinder from his common law wife before the burglary, then the only rational, alternative inference from the evidence would have been that appellant received the grinder as property stolen from the burglary of complainant's garage, since there was no evidence of another burglary or of any basis for finding innocent possession other than appellant's own story. On this record, therefore, these jurors—while believing appellant's story about purchasing the spray guns in good faith from the thief or thief's accomplice—would have had to find receipt of the grinder with guilty knowledge by speculating, for example, along the following lines: appellant purchased in good faith *both* the spray guns and the grinder in the same transaction before learning they were stolen; when complainant confronted appellant with the news that the spray guns belonged to complainant, appellant had reason to know, for the first time, that the grinder (located in another garage) also belonged to complainant; but, since complainant did not confront appellant about the grinder, appellant remained silent and retained possession of it "having cause to believe the [grinder] to be stolen." D.C. Code § 22–2205 (1981). Alternatively, some jurors could have speculated that appellant purchased the spray guns in good faith before complainant confronted him but purchased the grinder later from the same person, thus knowing it must have been stolen.

Accordingly, for jurors to believe appellant's spray gun story but to discredit the evidence that the grinder belonged to appellant, they would have had to find that appellant had concocted the story about the grinder after learning he had purchased stolen spray guns. In that way, some jurors theoretically could have convicted on the basis of the grinder alone. Such reasoning, however, is too speculative and tortured; no reasonable juror could have reasoned that way based on evidence introduced at trial.

It is also possible, of course, that some jurors simply believed appellant's spray gun-purchase story, while believing the grinder story was too far-fetched to be true, and thus irrationally convicted on the basis of the grinder alone. But we are not permitted to find reversible error when the only basis for perceiving the jury's verdict was not unanimous would be that the jury acted irrationally.

■ Notwithstanding theoretical possibilities, therefore, we conclude that under the particular circumstances of this case the instructional error, although of a constitutional magnitude, was harmless be-

yond a reasonable doubt. No reasonable juror could have accepted appellant's version regarding the spray guns while at the same time disbelieving his account of how he acquired the grinder. It is therefore clear beyond a reasonable doubt that, because the jury convicted appellant, it unanimously and reasonably agreed that he feloniously received the spray guns, if not the grinder as well.

*Affirmed.*

NEBEKER, Associate Judge, concurring:

I concur in the opinion of the court overruling *Barkley v. United States*, 455 A.2d 412 (D.C.1983), and in the holding that the instructional failure was harmless constitutional error.[1] I understand the court's opinion to say that of all theoretical possibilities the most likely and logical by far is that the jury was unanimous in convicting on the spray guns. That was the thrust of my concurring opinion. *Scarborough v. United States*, 496 A.2d 277, 283 (D.C. 1985) (Nebeker, J., concurring).

Under Supreme Court decisions, this court may couch the harmlessness conclusion in terms of "beyond a reasonable doubt," *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), or that there exists no substantial probability of a different result. *See United States v. Bagley*, 473 U.S. 667, —, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Various other language has been used to describe this harmlessness test, *e.g.*, " 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* 473 U.S. at —, 105 S.Ct. at 3384.

Perhaps the most cogent statement on the nature of harmless constitutional error appears in *Rose v. Clark*, 478 U.S. —, —, 106 S.Ct. 3101, 3108 n. 11, 92 L.Ed.2d 460 (1986), where Justice Powell, speaking for the Court, answered Justice Blackmun's dissent:

We think the dissent, and not the Court, "asks and answers the wrong question" in this case. *Post*, at — [106 S.Ct. at 3116], 92 L.Ed.2d [at] 482 (Blackmun, J., dissenting). We agree that the determination of guilt or innocence, according to the standard of proof required by *Winship* and its progeny, is for the jury rather than the court. *See id.*, at — [106 S.Ct. at 3114–3115], 92 L.Ed.2d [at] 480–481. Harmless-error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome? This question applies not merely to *Sandstrom* [*v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) ] violations, but to other errors that may have affected either the instructions the jury heard or the record it considered—including errors such as mistaken admission of evidence, or unconstitutional comment on a defendant's silence, or erroneous limitation of a defendant's cross-examination of a prosecution witness. All of these errors alter the terms under which the jury considered the defendant's guilt or innocence, and therefore all theoretically impair the defendant's interest in having a jury decide his case. The dissent's argument—that the Sixth Amendment forbids a reviewing court to decide the impact of a trial error on the outcome, *Post* [478 U.S.] at — [106 S.Ct. at 3114], 92 L.Ed.2d [at] 480, logically implies that all such errors are immune from harmless-error analysis. Yet this Court repeatedly has held to the contrary. *E.g., Delaware v. Van Arsdall*, 475 U.S. —, 89 L.Ed.2d 674, 106 S.Ct. 1431 (1986) (limitation on defendant's cross-examination); *United States v. Hasting*, 461 U.S. 499, 76 L.Ed.2d 96, 103 S.Ct. 1974 (1983) (improper comment on defendant's failure to testify); *Moore v. Illinois*, 434 U.S. 220, 54 L.Ed.2d 424, 98 S.Ct. 458 (1977) (admission of improperly obtained witness identification). In-

---

1. The effect of our holding is dictated by *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (constitutional holding applicable to all cases pending direct appeal).

deed, *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705; 87 S.Ct. 824, 24 A.L.R.3d 1065) (1967), the beginning of this line of cases, applied harmless-error analysis to an error that placed an improper argument before the jury. *Id.*, at 24–25, 17 L.Ed.2d 705, 87 S.Ct. 824 [at 828–829], 24 A.L.R.3d 1065 (finding comment on defendant's silence harmful). *See also Hopper v. Evans*, 456 U.S. [605] at 613–614, 72 L.Ed.2d 367, 102 S.Ct. 2049 [at 2054 (1982)] (citing *Chapman*, and finding error in jury instructions harmless). These decisions, ignored by the dissent, strongly support application of harmless-error analysis in the context of *Sandstrom* error.

We are today following this majority analysis in treating this instructional error as one that "in practice clearly had no effect on the outcome" though "in theory, [it] may have altered the basis on which the jury decided the case." *Id.*

MACK, Associate Judge, concurring in part and dissenting in part:

I find the majority's factual analysis (as to what a reasonable juror could have believed) to be "speculative and tortured." I would reverse. The omission of the unanimity instruction under the circumstances of this case constituted an error of constitutional magnitude. I cannot find this violation of the sixth amendment to be harmless beyond a reasonable doubt.

NEWMAN, Associate Judge, concurring in part and dissenting in part, joined by MACK, Associate Judge:

I join fully in the opinion for the majority save for Part III. I cannot say, with the requisite certainty, that the error was harmless beyond a reasonable doubt.