**Glenn Anthony DAVIS, a/k/a Anthony G. Davis, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–488.**

District of Columbia Court of Appeals.

Submitted Feb. 5, 1991.

Decided May 10, 1991.

Michael P. Colucci, appointed by this court, was on the brief, Washington, D.C., for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, Diane M. Munson, and Claudette V. Humphreys, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and KERN, Senior Judge.

KERN, Senior Judge.

This appeal presents for our determination whether there was sufficient evidence presented by the prosecution at trial to support the jury's verdict that appellant was guilty of possession of a controlled substance (cocaine) in violation of D.C.Code § 33–541(d) (1988 Repl.). We conclude there was and so affirm.

The basic facts developed at trial are uncomplicated. Police officers observed appellant drinking beer while seated in a public park.[1] As the officers approached

---

1.  D.C.Code § 25–128(a) (1981 & 1990 Supp.) proscribes drinking or possessing open contain-ers of alcoholic beverages in, *inter alia*, parks.

him, they saw that he held a cigarette with its tobacco removed and end twisted,[2] and that he put an object in his coat pocket. When the officers identified themselves, he arose from the bench and appeared to put an object in the beer can from which he had been drinking. A brief struggle ensued before appellant was handcuffed during which the can fell to the ground and some of its liquid spilled out. The officers recovered "a small off-white colored rock-like substance from the ground in a puddle of beer near the beer can" and "a small, white colored rock-like substance" from appellant's coat pocket.

The officers performed separate field tests on each of the "rocks" they had recovered and both tested positive for cocaine. The rocks, one of which was larger than the other,[3] were placed in separate and secure plastic bags and routinely transmitted to the Drug Enforcement Administration laboratory for chemical analysis by a forensic chemist. The chemist's report was served upon counsel before trial and submitted to the jury as evidence. It certified that the "white chunks" weighed "144 mg." and were 97% cocaine.

At trial the prosecutor put to the government's expert witness a question whether "assuming the weight to be 144 milligrams with 97 percent of purity of crack ... is this a usable amount?" The expert answered, "A usable amount is any amount of a drug that can be taken in or ingested into the body. In this particular case it is 144 milligrams which is plenty to go ahead and put into a device and smoke it."

At no time during the trial did the defense contend that the rocks were not usable as drugs, but rather it presented a witness who testified appellant never had possession of the rocks.

■ The trial court's instructions to the jury created the difficulty which now divides this court in its decision of this appeal. Specifically, the court charged the jury: "Now the Government does not have to prove that there was any particular amount of cocaine involved, but it does have to show you beyond a reasonable doubt that there was a usable amount of cocaine possessed." The court went on to say:

> The evidence in this case suggests that there may be two ... elements of cocaine possessed; one allegedly possessed in the pocket of the defendant, the other allegedly on the ground. Now you may find the defendant guilty if you find that he possessed either of these pieces of ... alleged cocaine, but you must be unanimous as to which one he possessed. For example, if six of you found that he possessed the one allegedly taken from his pocket and six found that he possessed the one allegedly in the puddle, but you could not agree on which one, you would not be able to find the defendant guilty. You would have to be unanimous as to at least one that he possessed in order to find him guilty.[4]

The jurors after some deliberation submitted two questions to the judge. The first question was: "In order to find the defendant guilty, if the jury can agree on only one of the specimens of cocaine belonging to the defendant, does this single specimen have to constitute a usable amount?" The second question was: "If the answer is yes, do the specimen on the ground and the specimen in his pocket each

---

2. There was testimony that crack cocaine can be broken up and placed inside a regular cigarette for smoking after the smoker has first removed some of the tobacco.

3. The trial court, in denying appellant's post-trial motion for judgment of acquittal, stated "[e]ach rock could be seen and held ... [t]hough one rock is significantly smaller than the other."

4. As the trial judge recognized and stated subsequent to giving the charge, "the unanimity instruction ... probably need not have been given." We agree. Appellant's alleged possession of two rocks of cocaine, one in his pocket and one on the ground in close proximity to him, constituted a single legally cognizable act of possession. *Briscoe v. United States*, 528 A.2d 1243 (D.C.1987). Appellant did not offer at trial differing defenses to possession of each of the two separate rocks of cocaine. *See Scarborough v. United States*, 522 A.2d 869, 873 (D.C.1987) (en banc).

constitute a usable amount? If only one does, which specimen is it?"

The judge answered the first question in the affirmative. As to the second question he advised, "I can't supply you with an answer to this question. You will have to use your own memories and your own judgment." Thirty minutes later, the jury rendered its guilty verdict, which appellant now challenges.

Appellant argues in essence that while there was direct evidence in the forensic chemist's report and the expert's testimony that the two rocks *together* were usable as a narcotic, there was no direct evidence in either the report or the testimony that *each* rock was in and of itself usable as a narcotic. Thus, the issue is whether the jury's ultimate conclusion in this case—under the particular instructions given—constituted a reasonable inference from all the evidence or amounted to an improper, and hence reversible, speculation without evidentiary foundation.

This court, in *Wishop v. United States,* 531 A.2d 1005 (D.C.1987), stated with respect to the evidence required to prove that a proscribed substance is usable:

> *Edelin [v. United States,* 227 A.2d 395 (D.C.1967) ] holds only that if the quantity of a drug is too small to be capable of quantitative analysis, there must be "additional proof of its usability as a narcotic" in order to sustain a conviction. 227 A.2d at 399. Implicit in this holding is the converse proposition that if the quantity is more than a trace, and therefore measurable, "additional" proof may not be necessary (though of course it is not prohibited, and in some cases the facts may require it.)

*Wishop v. United States, supra,* 531 A.2d at 1008. This court went on to state:

> *Edelin* and its progeny make clear that the critical requirement is usability, not measurability.... [T]he fact that a drug is measurable—*i.e.,* capable of quantita-

tive analysis—will usually suffice to prove that it is usable.

*Id.*

■ In the instant case, the rocks of cocaine were capable of and subjected to quantitative analysis. The laboratory test found that they weighed 144 milligrams and were 97% pure cocaine. The expert witness testified that their weight exceeded the minimal amount sold in the street, *viz.:* 70 milligrams, and were "plenty" to smoke as a narcotic drug. Thus, the instant case contrasts sharply with *Singley v. United States,* 533 A.2d 245, 247–48 (D.C.1987), upon which appellant relies. There, the government was able to present evidence only that "a 'small amount' " of heroin was in the substance seized from the defendant, and the expert witness was *unable* to state an opinion whether these "traces" or "residue" of heroin were usable as a narcotic. As a consequence, the prosecution was forced to rely on its proof of the usability of the substance as a narcotic upon the *prospective* use of the substance by the defendant. Given this set of circumstances, this court was compelled to conclude that the jury had to speculate in reaching its guilty verdict and, hence, the conviction could not stand.

Appellant, as well as the dissent, urge us to conclude that there was simply no evidence from which the jury could find that each rock was usable as a narcotic drug and hence the trial court erred in refusing to grant his post-verdict motion for judgment of acquittal. Given the forensic evidence presented that each rock was almost pure cocaine and together weighed 144 milligrams,[5] that each rock was of such size that it could be held, that only 3% of the substance (an amount significantly less than even the smaller rock) was not cocaine, that the amount of cocaine in the rocks according to the expert was "plenty" to smoke, and that the government is entitled to all reasonable inferences in its favor

5. We note this court's comment in *Wells v. United States,* 515 A.2d 1108, 1114 (D.C.1986):

The government is *not* required to quantify the exact purity of the heroin in each package as long as the substance seized consisted of

more than mere traces of heroin and can be identified as heroin.

In the instant case, the evidence was that the white chunks consisted of cocaine and were more than mere traces—144 mg.

when a challenge to the sufficiency of the evidence is made, *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987), we conclude that there was evidence to support the jury's verdict, and the judgment must be and is

*Affirmed.*

ROGERS, Chief Judge, dissenting:

Because I conclude that binding authority makes clear the failure of the government to meet its burden of proof to show that appellant Glenn Davis possessed a usable amount of cocaine, D.C.Code § 33–541(d) (1989), I would reverse and remand for a new trial. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971). Accordingly, I respectfully dissent.

I.

A full statement of the evidence is critical to the application of binding authority. The government's evidence showed that two members of the United States Park Police first saw appellant and Antonio Freeman, his companion, sitting on a bench in Franklin Park and drinking from a can of beer. The officers observed appellant "making some type of movements with his hands and turning around as if to see if anyone was looking at him." As the officers approached, they saw appellant place something in his coat pocket. The officers also noticed that appellant was holding "a cigarette which had the end of it twisted." After one of the officers identified himself as a police officer, appellant appeared to place something in the beer can and then dropped the can to the ground. The officers attempted to place appellant under arrest for drinking in public, and an altercation ensued.

After appellant was handcuffed, he continued to struggle, attempting to prevent the officers from getting into his coat pocket. One officer nevertheless searched appellant's person, finding "a small white-colored rock-like substance" in his right coat pocket. Another officer "recovered a small off-white-colored rock-like substance from

the ground in a puddle of beer near the beer can." Both specimens tested positive for the presence of cocaine in a field test conducted by one of the officers.

In addition to the arresting officers, at trial the government offered Lieutenant Henry Berberich as an expert witness on the use of cocaine and on the Park Police procedures for safeguarding evidence. Lieutenant Berberich testified that a chemical analysis had been performed on the specimens retrieved at appellant's arrest, and that the two specimens together weighed 144 milligrams (mg.), 97% of which was cocaine. The witness opined that 144 mg was a usable amount, in excess of "the smallest street dosage unit you can buy," which would contain 100 mg.

At the request of defense counsel, the judge gave a special unanimity instruction to the jury:[1]

Now, ladies and gentlemen, the evidence in this case suggests that there may be two what we might call elements of cocaine possessed. One allegedly possessed in the pocket of the defendant and the other allegedly on the ground.

Now, you may find the defendant guilty if you find that he possessed either of these pieces of cocaine, alleged cocaine. But you must be unanimous as to which one he possessed.

For example, if six of you find that he possessed one allegedly taken from his pocket and six found that he possessed one allegedly from the puddle, but you cannot agree on which one, you would not be able to find the defendant guilty. You would have to be unanimous as to at least one that he possessed in order to find him guilty.

After deliberating for some time, the jury requested a clarification. The dialogue between the judge and the jury was as follows:

[The jury]: In order to find the defendant guilty, if the jury can unanimously agree on only one of the specimens of cocaine belonging to the defendant, does

[1] The government did not object to the instruction.

this single specimen have to be a usable amount?

[The judge]: Yes.

[The jury]: If the answer is yes, do the specimen on the ground and the specimen in his pocket each constitute a usable amount? If only one does, which specimen is it?

[The judge]: I can't supply you with an answer to this question. You will have to use your own memories and your own judgment.

Appellant moved for judgment of acquittal, which the trial judge took under advisement. After the jury returned a guilty verdict, the trial judge denied the motion for judgment of acquittal. The judge reasoned that even if the jury believed appellant possessed only one of the specimens, "the jury could have concluded that each rock contained 97% cocaine." Thus, the judge concluded that there was sufficient evidence to support a guilty verdict, "even if it cannot be determined which chunk, if only one, the jury was agreed on, or whether the jury agreed on both."

## II.

Appellant relies on *Barkley v. United States*, 455 A.2d 412, 414 (D.C.1983), which held that "whenever various alternative theories of liability are submitted to a jury, any one of which is later determined to be improper, the conviction cannot be sustained." [2] In particular, appellant points out that the jury was instructed that it could convict him if it found that (1) he possessed the specimen in his jacket, (2) he possessed the specimen on the ground, or (3) he possessed both specimens. Appellant claims that the government did not establish that either specimen by itself constituted a usable amount. Thus, because the first two theories were based on insufficient evidence, appellant maintains that this court cannot determine whether the jury convicted him on the basis of an improper theory, and that under *Barkley* reversal is required.

In order to convict appellant of possession of a controlled substance, the government was required to prove beyond a reasonable doubt that he possessed a "usable amount" of cocaine. *See, e.g., Wishop v. United States*, 531 A.2d 1005, 1007–08 (D.C.1987); *Edelin v. United States*, 227 A.2d 395, 399 (D.C.1967). This rule is predicated on the common sense notion that "where the seized substance is of an amount so inconsiderable as to make it of no utility to a user and unmarketable, it is not such a narcotic as contemplated by Congress to be a danger to society." *Wishop, supra*, 531 A.2d at 1008 (quoting *Blakeney v. United States*, 366 A.2d 447, 449 (D.C.1976)). The government can satisfy its burden in many ways. "[T]he fact that a drug is measurable—*i.e.*, capable of quantitative analysis—will usually suffice to prove that it is usable." *Wishop, supra*, 531 A.2d at 1008. "Usability can also be established by other means—by expert testimony, for example." *Id.* at 1008 n. 6; *see also Hawkins v. United States*, 482 A.2d 1230, 1232–33 (D.C.1984) (police detective expert testimony that similar amounts of the drug are typically bought, sold and used).

In the instant case, after affording the government the benefit of all reasonable inferences, the evidence only demonstrated that the two rocks *in combination* constituted a usable amount. The government's evidence about usable amount came from the chemist's report and the expert testimony of Lieutenant Berberich.[3] The chem-

---

**2.** Although another portion of *Barkley* has been overruled, *see Scarborough v. United States*, 522 A.2d 869 (D.C.1987) (en banc), the holding appellant relies upon retains validity. *See Williams v. United States*, 521 A.2d 663, 665 (D.C.1987).

**3.** In an effort to support its conclusion that each of the specimens was a usable amount, the majority relies in part on the positive results of field tests performed on the two specimens by an arresting officer. Unlike the majority, however, the government at trial placed little reliance on the field test results. No evidence was presented to the jury to establish that the field test results indicated the presence of more than a trace of cocaine. Indeed, neither the arresting officers nor the expert witness were asked to explain the accuracy or even the significance of the field test results. Under such circumstances, the jury could not reasonably draw any inference of usable amount from the field tests.

ist's report provides no information about the separate composition of the two rocks, because the two specimens were not separately analyzed. The report simply states that both rocks, in combination, added up to 144 mg of 97% pure cocaine. Lieutenant Berberich similarly testified only that 144 mg was a usable amount. Significantly, he did not testify that either rock alone would constitute a usable quantity. Thus, the government provided no evidence, based on quantifiable measurement or typical use, to demonstrate that either specimen, standing alone, was a usable amount.

The majority erroneously refers to "forensic evidence presented that each rock was almost pure cocaine...." Majority opinion at [6]. No such forensic evidence was introduced at trial. As the government concedes, the evidence "established that the two pieces or rock appellant possessed *together* constituted 144 mg. of 97 percent pure cocaine." (Emphasis added).

More important, the majority concludes that the jury could infer, based on no evidence from the trial, that each rock was a usable amount based on the fact that "only 3% of the substance (*an amount significantly less than even the smaller rock*) was not cocaine." Majority opinion at [1038] (emphasis added). This statement is flawed, for two reasons. First, as a factual matter, there was no testimony about the relative sizes of the two rocks. Although the trial judge remarked, outside of the presence of the jury, that "one rock was *significantly* smaller than the other," (emphasis added) this remark hardly serves as a basis to conclude that the smaller rock constituted more than three percent of the total. Moreover, even if the majority had some evidentiary basis for concluding that the smaller rock appeared to contain more

than three percent of the total, the jury could not reasonably draw an inference of usable amount from that fact. According to the majority, the jury could reasonably infer, without the benefit of expert testimony, that both rocks must be cocaine, given the relative sizes of the rocks and the chemist's finding that the rocks in combination constituted 97% cocaine. The expert witness could have so testified, but he was not asked any questions about each rock in isolation. In the absence of any such evidence, the majority's reliance on such an inference is pure speculation.[4]

The government argues that the jury could have inferred from the circumstances surrounding appellant's arrest that the two rocks each separately constituted a usable amount. According to the government, appellant's "hand movements in his lap; his holding of the cigarette with the twisted end (as if it was holding something); and his attempt of [sic] crush the cigarette and put something in the beer can when the officer approached" all demonstrate that "appellant was in the process of preparing the crack for use by breaking it into two pieces." The government's argument is unpersuasive, for two reasons. First, this court has rejected a similar argument that the circumstances of possession can demonstrate usability:

No reliance can be placed by the trier of fact on [appellant's] intended usage. [His] subjective intentions alone are irrelevant to the actual contents of the powder.... Obviously, [he] could not be convicted if [he were] snorting ... talcum powder. Because erroneous intent and common practice are insufficient to convict if the substance is not in fact illegal, the inquiry must be confined to

---

4. Although the appellate court is ill-suited to render judgments about chemistry, the speculative nature of the majority's conclusion is clear. The chemist's report concluded that the two rocks together contained 97% cocaine, based on weight. Thus, the chemist concluded that three percent of the total weight was not cocaine. On the other hand, the trial judge's remark that one of the rocks was "significantly smaller" than the other could well have been a judgment about the relative volume of the two rocks. If, how-

ever, the non-cocaine substances in the rocks have a lower density (weigh less) than the cocaine, then the smaller rock, although occupying more than three percent of the total volume, could nonetheless contain no cocaine. This court cannot resolve the question; the expert witness should have been called on to make an informed judgment. These comments simply indicate that the majority's inference is even less compelling than it might at first seem.

the chemical contents of what [he] possessed.

*Singley v. United States,* 533 A.2d 245, 248 (D.C.1987).[5] Second, the government's argument begs the question in this case. If the jury had inferred that appellant broke a larger rock into two smaller pieces, it would necessarily also have concluded that appellant possessed both specimens recovered by the police. Thus, the government's speculation about this possible jury inference is of no help in addressing the problem posed by this case: whether the government provided sufficient evidence to support a conviction on the theory that appellant possessed only one of the rocks. Once we "confine [this inquiry] to the chemical contents of what" appellant possessed, *Singley, supra,* 533 A.2d at 248, it is apparent that the government failed to prove that either rock by itself constituted a usable amount.[6]

The jury was instructed, however, that it could "find [appellant] guilty if [it found] that he possessed either of these pieces of cocaine, alleged cocaine" as long as the jury was unanimous as to which piece or pieces of cocaine he possessed. The jury's request for clarification indicates that it was concerned about whether the evidence showed that one of the rocks by itself constituted a usable amount. The jury submitted the following question:

> In order to find the defendant guilty, if the jury can unanimously agree on only one of the specimens of cocaine belonging to the defendant, does this single specimen have to be a usable amount? If the answer is yes, do the specimen on the ground and the specimen in his pocket each constitute a usable amount? If only one does, which specimen is it?

The judge responded "yes" to the first question, and declined to answer the second question. Thus, both the instructions and the communication between jury and judge left open the possibility that the jury found appellant guilty on the basis of the theory that appellant possessed only one of the rocks, despite the fact that the government failed to provide sufficient evidence to support a conviction on such a theory.

The court in *Barkley, supra,* 455 A.2d 412, held that just such a circumstance requires reversal. Barkley was convicted of grand larceny. The government introduced evidence to show that Barkley had entered a friend's home and stolen several items, including a speaker with $280 hidden within it and an amplifier worth more than $100. On appeal, Barkley complained that many of the items he had allegedly stolen were not shown to have a value in excess of $100, as required by the grand larceny statute, D.C.Code § 22–2201 (1981). The court held that "because those articles of unproven value could have been the sole basis for the conviction, the grand larceny conviction cannot be sustained." *Id.* at 414. The court relied on the principle that "whenever alternative theories of liability are submitted to a jury, any one of which is later determined to be improper, the conviction cannot be sustained. This is because of the possibility that the verdict might have rested entirely upon the improper theory." *Id.* (citing, *e.g., Chiarella v. United States,* 445 U.S. 222, 237 n. 21, 100 S.Ct. 1108, 1119 n. 21, 63 L.Ed.2d 348 (1980)). This holding in *Barkley* has been reaffirmed by the court. *See Williams v. United States,* 521 A.2d 663, 665 (D.C. 1987).[7]

---

5. The government's reliance on a footnote in *Brown v. United States,* 542 A.2d 1231, 1233 n. 2 (D.C.1988), is misplaced. In *Brown* the court noted that "testimony showed that Brown was seen actually smoking the cigarette immediately before his arrest. This constitutes sufficient evidence to withstand a motion for acquittal...." In the instant case, by contrast, no evidence showed that appellant had smoked either specimen. Moreover, the court in *Brown* may have adopted a standard that is incompatible with *Singley, supra,* 533 A.2d at 248, and *Wishop, supra,* 531 A.2d at 1008.

6. Nor could the government rely on the fact that the chemist did not report that either rock was non-cocaine or that either rock contained only microscopic traces of cocaine. The government bears the burden of proving that appellant possessed a usable amount. *See Wishop, supra,* 531 A.2d at 1007.

7. The government urges us to reconsider our holding in *Barkley* on the ground that it is "flatly inconsistent" with *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). In *Turner* the Supreme

In the instant case, as in *Barkley*, alternative theories of liability were submitted to the jury, some of which were based on insufficient evidence. Just as in *Barkley*, the court cannot determine whether the jury verdict rested on an improper theory. Accordingly, I would reverse the judgment, and remand for a new trial.[8]

Court noted the "general rule" that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." 396 U.S. at 420, 90 S.Ct. at 654. Nothing in the *Turner* opinion, however, precludes this court from adopting a different rule. Thus, we are bound by the ruling of the prior decision of this court. *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

8. I do not agree, however, with appellant's contention that he is entitled to a reversal with prejudice. The government presented one proper theory of liability supported by sufficient evidence: namely, that appellant possessed both rocks, and that both rocks together constituted a usable amount. Thus, the government should not be precluded from re-trying appellant before a jury that is properly instructed. *See Barkley, supra*, 455 A.2d at 416 (affirming conviction of lesser included offense predicated on a proper theory); *id.* (Ferren, J., dissenting) ("I would reverse and remand for a new trial"); *see also Thomas v. United States*, 557 A.2d 599 (D.C. 1989) (en banc) (double jeopardy does not preclude a second trial when the government has presented at the first trial sufficient evidence to support a conviction).