[No. C029962. Third Dist. Mar. 14, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH ANTONY MARQUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion on rehearing is certified for publication with the exception of part I.

## COUNSEL

Robert Wayne Gehring, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Timothy L. Rieger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DAVIS, J.—Defendant Joseph Antony Marquez was convicted by jury of two counts of robbery. (Pen. Code, § 211; further statutory references are to the Penal Code unless noted otherwise.) He was acquitted of being a felon in possession of a firearm. (§ 12021, subd. (a).) The court found true allegations defendant suffered two prior serious felony convictions within the meaning of section 667, subdivision (a) and the three strikes law. (§§ 667, subds. (b)-(i), 1170.12.) Sentenced to state prison, defendant appeals contending: (1) the court abused its discretion by excluding expert opinion testimony concerning a photographic lineup; and (2) there is not substantial evidence to support the two robbery verdicts. We conclude there is only substantial evidence to support one of the two counts of robbery. We will strike defendant's conviction for the robbery charged in count 2 and otherwise affirm. In so doing, we hold in the published portion of the opinion that when a defendant steals by force or fear more than one item during the course of an indivisible transaction involving a single victim, he commits only one robbery notwithstanding the number and ownership of the items he steals.

### FACTS

Julie Feldt, a waitress at a Lyon's Restaurant in Sacramento, completed her shift and was at the counter counting her tips. A man approached her.

She described the man as 25 to 30 years old, five feet seven inches or five feet eight inches with a slim to medium build, weighing 130-150 pounds, with dark hair and a mustache and wearing a navy blue Dallas Cowboys hat and T-shirt.

The man lifted his shirt, exposing a handgun, and demanded money. Feldt gave him over $70 in tip money and what was later determined to be over $600 from the cash drawer. Defendant turned and walked out the door. Later that night, Feldt identified defendant as the robber in a photographic lineup. During the trial she also positively identified defendant as the robber.

Jason Linton and his girlfriend, Tiffany Cazares, were at the Lyon's Restaurant at the time of the robbery and were preparing to pay their bill. Feldt pointed to a man, saying, "[T]his guy just robbed me . . . ." Linton followed the man Feldt identified as the robber. Linton described the man he followed as five feet seven inches or five feet eight inches tall, with a slender build.

The robber drove away in a light blue Plymouth Reliant station wagon, and Linton followed in his car. Linton telephoned authorities on his cellular telephone and reported the Reliant's license plate number. Defendant was the registered owner of the car, and the license plate number reported by Linton belonged to a light blue Plymouth Reliant station wagon.[2] A detective later inspected defendant's car and concluded it could not be driven without a key. Defendant testified that only he and his father had keys to his car.

Linton looked at the driver of the car, he followed and determined he was the same man he saw leaving the Lyon's Restaurant. The Reliant made what appeared to Linton to be evasive maneuvers and Linton eventually lost sight of it. At a photographic lineup, Linton stated he thought a photograph of defendant might be that of the man he followed in his car, but he was not certain. At trial, he could not positively identify defendant as the robber.

Cazares testified she saw defendant talk to Feldt at the register. Cazares described defendant as about five feet eight inches tall with a slender build, wearing jeans, a dark Dallas Cowboys T-shirt and a baseball cap. Feldt appeared nervous and agitated and said she had just been robbed. Feldt

---

[2]Linton first reported an incomplete license plate number, then reported the number corresponding to defendant's license plate.

pointed to the robber as he left the restaurant. Cazares identified defendant as the man Feldt had pointed to, both in a photographic lineup and at trial.

*Defense*

Defendant testified he was 30 years old, six feet tall and weighed about 170 pounds. He further testified that on the day of the offense he took his children to dinner and then to their mother's house, where he stayed until about 11:30 p.m. He then drove home. He was drunk at that time. About 10 minutes later he left again. He drove into a road median, bending a tire rim, changed the tire, returned home and went to bed.

Defendant's mother testified she never saw defendant wear a Dallas Cowboys shirt and did not see him with a gun or a large amount of cash around the time of the offense. She last saw defendant on the day of the offense about 8:00 or 9:00 o'clock in the morning and next saw him the following evening.

Defendant's stepfather testified that the day after the offense, defendant's car had a flat rear tire and no spare. The morning after the offense, defendant appeared to have been up all night and drinking. He never saw defendant with a gun.

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II

 Defendant contends the two robbery verdicts are not supported by substantial evidence. The applicable standard of review is settled. "On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] In cases in which the People rely primarily on circumstantial evidence, the standard of review is the same. [Citations.] '. . . [I]t is the jury, not the appellate court [that] must be convinced of the defendant's

*See footnote 1, *ante,* page 1302.

guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]' [Citation.] ' "Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt." ' " (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].)

In support of his claim, defendant refers to physical differences between himself and the witness's description of the robber, factors his expert on eyewitness identification testified would affect the reliability of an identification. He notes the absence of testimony that he matched the witness's description of the robber at the time of the offenses, and that there was no testimony that he possessed a firearm or clothes matching those described by the witnesses other than at the time of the robbery. He also contends Linton's testimony concerning his pursuit of the robber was unreliable.

Such factual assertions and possible inferences were appropriately made at trial and were necessarily rejected by the jury in favor of other reasonable inferences. Defendant was identified as the robber with varying degrees of certainty by three different witnesses. These identifications of defendant constitute substantial evidence that defendant committed the robbery of Julie Feldt. ▪ However, defendant correctly complains that he should not have been convicted of committing two separate robberies that evening.

In one seamless ill-conceived effort, defendant walked up to the counter at Lyon's Restaurant, threatened waitress Julie Feldt with a handgun, thereby convincing her to hand over her tips lying on the counter and Lyon's operating money from the cash drawer. This was an indivisible transaction involving a single victim who was forced to relinquish possession of two separately owned amounts of money at the same place and at the same time.

Based on the separate ownership of the two amounts of money taken, defendant was charged with and convicted of two counts of robbery. The court stayed the punishment on the count pertaining to the waitress's tips in recognition of the proscription against separate punishment when the punished acts are indivisible, i.e., when the secondary offense facilitated or was incidental to the primary offense, or when the secondary offense was

committed without a separate intent or objective.[4] (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [55 Cal.Rptr.2d 450]; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Nonetheless, the court erred in sentencing defendant for committing two robberies when only one occurred.

■ "Robbery is the felonious taking of personal property in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) It consists of larceny plus two aggravating circumstances: (1) when the property is taken from the person or presence of another, and (2) when the taking is accomplished by the use of force or threatened force. (4 Wharton, Criminal Law (15th ed. 1996) Robbery, § 454, pp. 2-3; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 635, p. 715.)

■ Since the central element of robbery is force or fear, a defendant may be convicted of a separate robbery for each victim of such force or fear, even if the victims are in joint possession of the property taken. (*People v. Ramos* (1982) 30 Cal.3d 553, 587-589 [180 Cal.Rptr. 266, 639 P.2d 908], revd. on other grounds in *California v. Ramos* (1983) 463 U.S. 992 [103 S.Ct. 3446, 77 L.Ed.2d 1171]; 2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Property, § 640, p. 722.) Here, in contrast, the defendant committed only one larceny against a single victim involving one threatened application of force and occurring at the same place and time. In these circumstances the single larceny can only support a single count of robbery.[5]

To hold otherwise would violate the hoary single larceny doctrine which has long been followed in the majority of cases wherein the issue of single or multiple larcenies has arisen, or has been discussed. (Annot. (1971) 37 A.L.R.3d 1407.) This doctrine provides that when property properly belonging to different persons is taken at the same time and place, only one larceny

---

[4]Section 654 reads in pertinent part as follows: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

[5]The facts of this case contrast strikingly with those that show a divisible transaction such as in *People v. Porter* (1987) 194 Cal.App.3d 34, 38 [239 Cal.Rptr. 269], where the defendant was properly punished for both robbery and kidnapping for purposes of robbery when he initially planned to rob the victim of the contents of a wallet and then formulated a new plan of kidnapping for purposes of stealing the contents of an automated teller machine. The facts are also different from cases such as *People v. Ramos, supra,* 30 Cal.3d at pp. 587-589, reversed on other grounds in *California v. Ramos, supra,* 463 U.S. 992, that involve multiple victims of threatened force or fear. Since the central element of robbery is force or fear, a defendant may be convicted of a separate robbery for each victim of such force or fear, even if the victims are in joint possession of the property taken.

will lie for the taking. (*Ibid.*) Of the jurisdictions that at one time held to the contrary, all but one have subsequently abandoned that position in favor of the single larceny doctrine. (*Id.* at p. 1410, § 2, 3.) It is a doctrine implicitly recognized in analogous holdings in this state.

In *People v. Smith* (1945) 26 Cal.2d 854 [161 P.2d 941], the court addressed whether a defendant who received in a single transaction property stolen from three different victims could be convicted of three separate counts of receiving stolen property. The court held that he could only be convicted of one count of receiving. In so holding, the court stated "[t]he gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge but the particular ownership of the goods is not an element of the crime. Neither the legal nor moral character of the act is affected in any way by the fact that the stolen property may have belonged. to several persons rather than to a single person." The court found "[f]urther support . . . by analogy in the authorities dealing with the crime of larceny, which authorities hold that the theft of several articles at one and the same time constitutes but one offense although such articles belong to several different owners. (See Wharton's Criminal Law (vol. 2) § 1171, p. 1489; *State* v. *Sampson,* 157 Iowa 257 [138 N.W. 473, 42 L.R.A.N.S. 967], and exhaustive note.)" (*Id.* at p. 859; see also *People v. Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556] [holding that a defendant who received on a single occasion a watch and a fur coat owned by different people committed only one offense of receiving stolen property].)

In *People v. Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], the defendant was convicted of burglary, robbery, grand theft, and automobile theft. Defendant entered the home of several women, tied them up, stole various items, and then took a car from the garage. The court held that since the robbery and the automobile theft arose out of the same transaction, Penal Code section 654 prohibited the imposition of a concurrent sentence for each offense. In arriving at that conclusion, the court cited *People v. Smith, supra,* 26 Cal.2d 854 and *People v. Lyons, supra,* 50 Cal.2d 245 for the proposition that the theft of several articles at the same time constitutes but one offense although such articles belong to several different owners. The court noted that this was a majority view in jurisdictions that had addressed it. It then noted the pernicious consequences of a failure to follow the single larceny doctrine: "If the rule were otherwise a burglar who entered an empty house and took numerous articles belonging to one person could be punished for only one offense, but if some of the articles belonged to each of the other members of the family, the burglar could be given consecutive sentences for as many offenses as there are members of the family." (1 Cal.3d at p. 378.)

## DISPOSITION

The judgment as to the robbery charged in count 2 is reversed. In all other respects, the judgment is affirmed. The trial court is directed to prepare a new abstract of judgment and to forward a copy to the Department of Corrections.

Sims, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2000.