[No. D042465. Fourth Dist., Div. One. Jan. 27, 2004.]

MATTHEW BRYAN MILLER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Michael J. McCabe for Petitioner.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, Kim-Thoa Hoang and Michael Zachry, Deputy District Attorneys, for Real Party in Interest.

OPINION

**McINTYRE, J.**—Penal Code section 211 defines a robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (All statutory references are to the Penal Code except as otherwise specified.) The issue presented in this case is whether the immediate presence

requirement of a robbery charge is satisfied where the defendant, after stealing property belonging to the victim but not from the victim's presence, is confronted by the victim as he is attempting to carry the property to a place of temporary safety and uses forcible resistance to keep the property. We conclude that the immediate presence requirement is met under such circumstances and thus deny the defendant's petition for a writ of prohibition challenging the superior court's order denying his motion to dismiss the robbery charge.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2002, Jose Higareda went into the public restroom at La Jolla Cove to change into his swimming trunks. He went into one of the restroom's enclosed stalls and hung his pants, which contained his wallet (with more than $200 in cash), cellular telephone and keys, on a hook inside the stall door. As Higareda was changing, Miller walked into the restroom and entered the stall directly across from Higareda's. There was no one else in the restroom at the time.

After Higareda finished putting on his swimming trunks, he walked out of the restroom, inadvertently leaving his pants hanging inside the stall. After taking a few steps outside the restroom, Higareda realized his mistake and went back into the restroom. He checked the stall where he had left his pants and, after discovering the pants missing, began looking under the doors of the other stalls to try to locate them. Higareda heard the sound of someone opening Velcro coming from the stall directly across from the one where he had left his pants.

Because his wallet had a Velcro fastener, Higareda became suspicious, entered a stall adjacent to the one Miller was in and looked over the top into Miller's stall. Miller, who appeared to be shielding something from Higareda's view, inquired what Higareda was doing. Higareda responded that someone had taken his belongings and Miller told him to report the situation to a lifeguard. Higareda waited outside Miller's stall for 15 to 20 minutes, expecting that Miller would come out. During that time, Miller repeatedly asked other persons who entered the restroom for toilet paper, but did not leave the stall.

Ultimately, Higareda's friend, Dennis O'Brien, entered the restroom looking for Higareda. Higareda told O'Brien that someone had taken his belongings and that he believed Miller had them. O'Brien knocked on the door of Miller's stall, demanding that Miller "give . . . the stuff back." Miller told O'Brien to leave him "the 'f' alone," but Higareda continued to demand that

Miller return his property. After additional exchanges, O'Brien announced that he was going to get a lifeguard, although, at Higareda's request, he did not leave the restroom.

Five to 10 seconds later, Miller came out of his stall and attempted to leave the restroom, saying "[l]et me out of here." Higareda and O'Brien blocked Miller from leaving and yelled for someone to get a lifeguard. Miller charged at the men, trying to push and shove his way out of the restroom. After a great deal of scuffling, O'Brien placed Miller in a headlock and Higareda demanded to see what Miller had in his pockets. Miller gave Higareda his wallet, which Higareda held until lifeguards arrived.

Police arrested Miller at the scene and found $241 in cash in his wallet, which did not fasten with Velcro, and 2.43 grams of methamphetamine in his shorts pocket. O'Brien told the officers that he found Higareda's pants and empty wallet underneath a tremendous mound of toilet paper in the stall Miller had occupied. Officers suspected that Miller was under the influence of a controlled substance at the time of his arrest; Miller subsequently tested positive for the presence of methamphetamine.

The district attorney charged Miller with one count each of robbery and possession of a controlled substance. At an April 3, 2003 preliminary hearing on the charges against Miller, O'Brien and two police officers testified. (Although Higareda did not testify at the preliminary hearing, one of the officers testified about Higareda's statements concerning the incident. The officer's testimony was admissible pursuant to section 872, subdivision (b).) The magistrate held Miller to answer both charges.

Miller filed a section 995 motion to dismiss the robbery charge against him on the ground that the evidence did not establish that he took property from Higareda's person or immediate presence. The superior court concluded that, in accordance with *People v. Estes* (1983) 147 Cal.App.3d 23, 27 [194 Cal.Rptr. 909] (*Estes*), Miller's resistance to Higareda's attempt to regain the property was sufficient to establish the immediate presence requirement and that the evidence thus supported the robbery charge against Miller. Based on its findings, the court denied Miller's section 995 motion.

Miller filed the instant petition for writ of prohibition, challenging the denial order and reasserting his argument that because there is no evidence showing the property was taken from Higareda's person or immediate presence, the evidence admitted at his preliminary hearing is insufficient to support the robbery charge against him. We issued an order to show cause why the relief should not be granted and stayed further proceedings in the trial court.

## DISCUSSION

### 1. *Standard of Review*

■ In ruling on a motion to dismiss made pursuant to section 995, the superior court sits as a reviewing court of the magistrate's determination that the evidence is sufficient to hold the defendant over for trial. In this situation, the magistrate is the trier of fact and the superior court has no power to judge credibility, resolve conflicts, weigh evidence or draw its own factual inferences, but instead must draw every legitimate inference in favor of the information. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *People v. Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].) Where the defendant seeks review by appeal or writ in this court, we review the magistrate's determination rather than that of the superior court. (*People v. Laiwa, supra,* 34 Cal.3d at p. 718.) The essential question for our consideration is whether as a matter of law the evidence is sufficient to support the information, i.e., that the evidence establishes "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226 [6 Cal.Rptr.2d 242, quoting *People v. Slaughter* (1984) 35 Cal.3d 629, 637 [200 Cal.Rptr. 448, 677 P.2d 854].)

### 2. *Robbery*

■ As noted above, a "robbery" is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The crime is essentially a theft with two aggravating factors, that is, a taking (1) from victim's person or immediate presence, and (2) accomplished by the use of force or fear. (*People v. Marquez* (2000) 78 Cal.App.4th 1302, 1308 [93 Cal.Rptr.2d 758]; see *People v. Avery* (2002) 27 Cal.4th 49, 53, fn. 4 [115 Cal.Rptr.2d 403, 38 P.3d 1].)

■ "The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742] (*Cooper*).) "Immediate presence" is spatially, not temporally, descriptive and thus "refer[s] to the area *from which* the property is taken, not *how far* it is taken" or for what duration. (*Cooper, supra,* 53 Cal.3d at p. 1166.) " 'A thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.' " (*People v. Hayes* (1990) 52 Cal.3d 577, 626–627 [276 Cal.Rptr. 874, 802 P.2d 376], quoting *Commonwealth v. Homer* (1920) 235 Mass. 526, 533 [127 N.E.

517].) The "immediate presence" component focuses on whether the stolen property was located in an area in which the victim could have expected to take effective steps to retain control over his property. (*People v. Frye* (1998) 18 Cal.4th 894, 956 [77 Cal.Rptr.2d 25, 959 P.2d 183].) Traditionally, the "immediate presence" requirement has been described as relating to the "gaining possession" element of the taking rather than the "carrying away" element of a robbery charge. (*Cooper, supra,* 53 Cal.3d at p. 1166.)

■ To support a robbery charge, the taking must also be accomplished by force or fear. (*Cooper, supra,* 53 Cal.3d at p. 1165, fn. 8.) Circumstances otherwise constituting a mere theft will establish a robbery where the perpetrator peacefully acquires the victim's property, but then uses force to retain or escape with it. For example, in *People v. Anderson* (1966) 64 Cal.2d 633 [51 Cal.Rptr. 238, 414 P.2d 366] (*Anderson*), the California Supreme Court held that the defendant was properly convicted of robbery based on evidence that he examined a rifle and ammunition at a pawnshop under the guise of being interested in purchasing the items and while the pawnshop clerk was totaling the purchase price, he loaded the rifle and pointed it at the clerk to facilitate his escape.

The *Anderson* court stated "[i]n this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. [Citations.] [¶] Accordingly, if one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence, . . . the crime of robbery has been committed." (*Anderson, supra,* 64 Cal.2d at p. 638, italics added.)

The *Anderson* court cited with approval *People v. Phillips* (1962) 201 Cal.App.2d 383 [19 Cal.Rptr. 839], in which the defendant had a gas station attendant pump gasoline into his car and then confronted the attendant with a rifle, refusing to pay for the gas. There, the appellate court affirmed the judgment of conviction based on the taking of the gasoline, upholding the jury's implicit finding that the defendant took the gasoline from the immediate presence of the attendant by means of force or fear. (*Id.* at pp. 384–387.)

■ Although these cases address the peaceful acquisition of property from the immediate presence of the victim, with force or fear arising only in an effort to carry the property away, subsequent authority establishes that the victim's presence after the taking is in progress is sufficient to establish the immediate presence element of a robbery charge. In *Estes, supra,* 147

Cal.App.3d 23), a department store security guard saw the defendant shoplifting items of clothing inside the store and attempted to stop the defendant, who had left the store without paying for the items. (*Id.* at p. 26.) The defendant pulled out a knife, swung it at the security guard and threatened to kill the guard. (*Ibid.*)

The *Estes* court rejected the defendant's contention that the merchandise was not taken from the security guard's immediate presence, stating "[t]he evidence establishe[d] that [the defendant] forcibly resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence. *By preventing the guard from regaining control over the merchandise*, [the] defendant is held to have taken the property as if the guard had actual possession of the goods in the first instance." (*Estes, supra*, 147 Cal.App.3d at p. 27, italics added.) The *Estes* court also observed that a "[d]efendant's guilt is not to be weighed at each step of the robbery as it unfolds. The events constituting the crime of robbery, although they may extend over large distances and take some time to complete, are linked by a single-mindedness of purpose. [Citation.]" (*Id.* at p. 28.)

Miller and the dissent suggest that because the security guard in *Estes* observed the thief taking clothing from the store, the immediate presence element was otherwise satisfied in accordance with the standard set forth in *People v. Hayes, supra*, 52 Cal.3d at pages 626–627 (to wit, that "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it") and that the above-quoted language in *Estes* was merely dicta. We disagree. Although the *Estes* court *could have* found that the immediate presence element was satisfied based on the security guard's observation of the theft, the fact remains that it did not do so. Rather the court concluded that, as the use of force or fear only in carrying the stolen property away was sufficient to support a robbery charge, the victim's immediate presence during the asportation of the property was likewise sufficient. Courts and practitioners have widely accepted this analysis, such that robberies in which the victim only comes upon the defendant after the latter has gained possession of the stolen property are commonly referred to as "*Estes* robberies."

Miller argues and the dissent agrees that to the extent *Estes* concludes the element of "immediate presence" can be satisfied by a victim's presence during a defendant's asporting or carrying away of property, the California Supreme Court subsequently overruled it on that issue in *Cooper*. However, although *Cooper* described the immediate presence element of a robbery charge as relating to the "gaining possession" element of the taking rather

than the "carrying away" element (*Cooper, supra,* 53 Cal.3d at p. 1166), the opinion did not overrule or disapprove of *Estes* in any respect, but rather cited *Estes* with approval. (*Id.* at p. 1165 & fn. 8.)

■ Although the dissent credits us with "complet[ing] the transmogrification of the crime of robbery," in light of the widespread acceptance of the analysis of *Estes* and the fact that the California Supreme Court has not criticized or overruled *Estes* in the 20 years since that decision issued, we do not believe that our opinion expresses a change in the law, but instead reflects the current state of the law on the issue of what is sufficient to establish the immediate presence element of a robbery charge. We conclude from these authorities that, although the immediate presence and force or fear elements of robbery originally had to be satisfied at the time of the gaining possession aspect of a taking, the law has long since allowed these elements to be supplied after the defendant has initially gained possession of the victim's property.

■ Pursuant to the long-standing principles announced in *Estes,* Miller's use of force to retain the property after Higareda confronted him while he was attempting to get away with Higareda's money was sufficient to support the assertion of a robbery charge against him. In such circumstances, Higareda could reasonably "have expected to take effective steps to retain control over his property" and thus the immediate presence requirement is satisfied. (*People v. Frye, supra,* 18 Cal.4th at p. 956; see also *People v. Webster* (1991) 54 Cal.3d 411 [285 Cal.Rptr. 31, 814 P.2d 1273] [holding that a reasonable trier of fact might find a taking of the victim's car from his immediate presence because it might infer that, absent the use of force or fear, the victim could have taken effective steps to prevent his three assailants from stealing his car, although the victim and the assailants were a quarter of a mile away at the time of the assault]; see also *People v. Pham* (1993) 15 Cal.App.4th 61, 64–68 [18 Cal.Rptr.2d 636] [holding that the jury properly convicted the defendant of robbery based on evidence that the victim confronted him as he was getting ready to flee with items taken from the victim's car and chased him, after which he dropped the items and started to physically attack the victim].)

For the foregoing reasons, we conclude that the preliminary hearing evidence is sufficient to support the existence of a taking from Higareda's immediate presence and thus the trial court did not err in denying Miller's section 995 motion to dismiss the robbery charge against Miller.

## DISPOSITION

The petition for a writ of prohibition is denied. The stay issued by this court will dissolve by its own terms when this opinion becomes final.

McConnell, P. J., concurred.

**McDONALD, J.,** Dissenting.—The majority opinion completes the transmogrification of the crime of robbery from the offense defined in Penal Code section 211[1] as the "taking of personal property in the possession of another, from his person or immediate presence . . . , accomplished by means of force or fear" to the new offense of the taking *or retaining* personal property under those circumstances, a change accomplished by the court without legislative assistance.

Section 211 defines "robbery" as "the felonious *taking* of personal property in the possession of another, *from his person or immediate presence*, and against his will, accomplished by means of force or fear." (Italics added.) "The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot. [Citation.]" (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742].) However, *Cooper* further stated: "Although the 'immediate presence' language comes directly from section 211, this language does not pertain to the *duration* of robbery. . . . Taking from the 'person' and from the 'immediate presence' [in section 211] are alternatives. These terms are spatially, rather than temporally, descriptive. They refer to the area *from which* the property is taken, not *how far* it is taken. [Citations.] Put another way, these limitations on the scope of the robbery statute relate to the 'gaining possession' component of the taking as distinct from the 'carrying away' component." (*People v. Cooper, supra,* 53 Cal.3d at p. 1166.) In *People v. Hayes* (1990) 52 Cal.3d 577 [276 Cal.Rptr. 874, 802 P.2d 376], the Supreme Court adopted the following definition of "immediate presence:" " ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' (*Commonwealth v. Homer* (1920) 235 Mass. 526, 533 [127 N.E. 517]; [citations].)" (*People v. Hayes, supra,* 52 Cal.3d at pp. 626–627.) "Immediate presence" means at least an area within which the victim could reasonably be expected to exercise some physical control over his or her property. (*Id.* at p. 627; *People v. Webster* (1991) 54 Cal.3d 411, 440 [285 Cal.Rptr. 31, 814 P.2d 1273].) Under the Supreme Court decisions in *Cooper, Hayes* and *Webster,* a necessary element of a section 211 robbery is the victim's presence in a location in which he or she could reasonably expect some physical

---

[1] All statutory references are to the Penal Code unless otherwise specified.

control of the personal property at the time the perpetrator gained possession of the property. In this case, Higareda was not in that location; he was outside the public restroom at the time Miller gained possession of Higareda's trousers and the items contained in those trousers. An element of the charged robbery, as described by the Supreme Court, is absent in this case. Miller may have been guilty of burglary, assault, theft or other criminal offenses, but he was not guilty of robbery. (See *Hayes,* at p. 627.)

The majority opinion agrees that Miller did not gain possession of Higareda's personal property from either his person or from his immediate possession. It also concludes that Miller retained possession of Higareda's personal property in his immediate presence during the asportation phase of the incident, and that retention of the personal property during the asportation phase of the incident satisfied the taking "from the person or immediate presence" element of robbery.

The majority opinion's conclusion that the victim's presence during the asportation phase of the incident is sufficient to satisfy the elements of robbery is directly in conflict with language of the Supreme Court's opinion in *Cooper.* It seeks to obviate that conflict by describing the Supreme Court cases as representing the "traditional" view of robbery (maj. opn., *ante,* at p. 221), which has evolved into a new and different rule creating a new and different offense known as an *"Estes* robbery."

The majority opinion's reference to an *"Estes* robbery" emanates from *People v. Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909]. The *Estes* court stated: "Defendant further alleges that the merchandise was not taken from the 'immediate presence' of the security guard. The evidence established that appellant [forcibly] resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence. By preventing the guard from regaining control over the merchandise, defendant is held to have taken the property as if the guard had actual possession of the goods in the first instance. (See *People v. Anderson* (1966) 64 Cal.2d 633 [51 Cal.Rptr. 238, 414 P.2d 366].)" (*People v. Estes, supra,* 147 Cal.App.3d at p. 27.) In *Estes,* a security guard observed the defendant shoplifting items inside a store and then attempted to stop him about five feet outside the store as he left without paying for those items. (*Id.* at p. 26.) The defendant pulled out a knife, swung it at the security guard, and threatened to kill him. (*Ibid.*) The language from *Estes* quoted *ante* is effectively dicta because the guard was present and observed the defendant gain possession of the property; the defendant in *Estes* gained possession of the property in the guard's immediate presence under the *Hayes* test and *Estes* is factually inapposite to this case. The court in *Estes* unnecessarily stated the element of "immediate presence" was satisfied retroactively by the defendant's use of

force during the asportation phase of the incident *after* he gained possession of the property. To the extent *Estes* stated the element of immediate presence can be satisfied by a victim's presence during a defendant's asporting or carrying away of property, it is inconsistent with *Cooper,* which concluded immediate presence applies only to the gaining possession component and *not* to the asporting or carrying away component. (*People v. Cooper, supra,* 53 Cal.3d at p. 1166.) *Estes* does not establish the immediate presence element was satisfied in this case.[2] Rather, *Estes,* under its facts, established only that the force or fear element of robbery could be satisfied if present during the asportation phase of the incident.

The majority opinion notes that *Estes* was decided before *Cooper* and that *Cooper* cites *Estes* without disapproval. However, *Cooper's* reference to *Estes* was in the context of the duration of the asportation element of robbery. *Cooper* referenced *Estes* by footnote after the statement "asportation is not confined to a fixed point in time." (*People v. Cooper, supra,* 53 Cal.3d at p. 1165.) The footnote stated: "This reasoning is consistent with a long line of Court of Appeal cases, left undisturbed by this court, holding that mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot. (See, e.g., *People v. Estes* (1983) 147 Cal.App.3d 23, 27–28 [194 Cal.Rptr. 909]; *People v. Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28]; *People v. Perhab* [(1949)] 92 Cal.App.2d 430, 434–436 [206 P.2d 1133].) In order to support a robbery conviction, the taking, either the gaining possession or the carrying away, must be accomplished by force or fear. . . ." (*Cooper, supra,* at p. 1165, fn. 8.) The approval by *Cooper* of *Estes* was limited to the temporal aspect of the force or fear element of robbery and confirmed the holding of *Estes,* but not its dicta, that the force or fear element of robbery may be supplied by conduct during the *asportation* phase of the incident even if not present at the *gaining possession* phase of the incident. That is an *Estes* robbery. *Cooper* gave no approval to the language of *Estes,* which was unnecessary to its decision, that the immediate presence element of robbery could be satisfied during the asportation phase of the incident although not present at the gaining possession phase.

---

[2] *Estes's* citation to *People v. Anderson, supra,* 64 Cal.2d 633 does not persuade me to reach a different conclusion. *Anderson* stated: "[I]f one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence . . . , the crime of robbery has been committed." (*Id.* at p. 638.) Because *Anderson* deals with the element of force or fear and not the element of taking from the victim's immediate presence, it does not provide support for *Estes's* apparent conclusion that the immediate presence element can be satisfied during the asporting or carrying away of property. Based on the same reasoning, *People v. Kent* (1981) 125 Cal.App.3d 207 [178 Cal.Rptr. 28], also cited by *Estes,* is inapposite.

I do not agree with the majority opinion that the crime of robbery has evolved into a retention rather than a taking crime and, because bound by my understanding of *Cooper* and *Hayes,* I conclude the preliminary hearing evidence does not support a reasonable inference that the property was on Higareda's person or in his immediate presence at the time Miller gained possession of it. The trial court therefore erred by denying Miller's section 995 motion to dismiss the robbery charge against him. (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226 [6 Cal.Rptr.2d 242].) I would let a peremptory writ of prohibition issue restraining the San Diego County Superior Court from taking further action on the robbery charge against petitioner, other than to dismiss it.

Petitioner's petition for review by the Supreme Court was denied March 17, 2004. Kennard, J., Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.