[No. C047785. Third Dist. July 14, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK RUDOLPH ESTRADA, Defendant and Appellant.

**COUNSEL**

William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—This case poses the question whether it is proper, during voir dire of prospective jurors, for a trial court to inform them that jurors have no legal authority to engage in what is known as "jury nullification," and to solicit their assurances that, if chosen to serve as jurors, they will follow the law as stated to them by the court and not substitute their own views of what the law should be.

The answer is, "Yes." As we will explain, although jurors have the "power" to engage in jury nullification, they have no legal authority to do so. " 'Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court. . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur *when it is within their authority to prevent.*' [Citation.]" (*People v. Williams* (2001) 25 Cal.4th 441, 460 [106 Cal.Rptr.2d 295, 21 P.3d 1209], italics added (hereafter *Williams*).) Indeed, a juror who refuses to follow the court's instructions on the law can be discharged from the jury because the person is "unable to perform his or her duty" as a juror.

(Pen. Code, § 1089; see *Williams, supra,* 25 Cal.4th at p. 448.) It logically follows that the court can also attempt to prevent such an occurrence of juror nullification by (1) informing prospective jurors at the outset that jurors have no authority to disregard the law and (2) obtaining their assurance that they will not do so if chosen to serve on the jury.

## FACTS AND PROCEDURAL BACKGROUND

Defendant Frank Rudolph Estrada walked into the Nugget Market in Davis, took two bags of charcoal and a package of sausage, placed them under his coat, and left the store without paying for the items. Having witnessed this, Rodolfo Granados, Jr., a loss prevention officer, followed defendant out of the store, caught up with him, and announced "security" and "stop." Defendant turned around and hit Granados in the ear with his fist. Granados grabbed defendant and, in Granados's words, "[b]oth of us had each other in somewhat of a headlock hold by a light pole that was pinned between us. He said something to the effect of 'Let me go or I'll kick your ass.' I told him to give up, that one way or the other he was coming back with me. He was placed under a citizen's arrest. He at that time became more compliant. I was able to put handcuffs on him." In the meantime, defendant's accomplice dropped a bottle of cognac, threw a can of lighter fluid at a clerk, ran out of the store, and escaped.

When questioned by a police officer, defendant admitted he and his accomplice had agreed to enter the store to steal charcoal and lighter fluid. According to defendant, they planned to use it to light a fire in order to stay warm. The incident occurred in the month of January.

Defendant was charged with attempted robbery, burglary, and petty theft of retail merchandise, and was accused of committing the crimes while released on bail or on his own recognizance.

The defense called no witnesses at trial. During closing argument to the jury, defense counsel conceded defendant's guilt on the petty theft charge, argued the attempted robbery charge was unwarranted, and left the burglary "up to you [the jurors] because it makes sense." Counsel implored the jury: "Convict [him] of a petty theft. We're talking sausage. . . . That's what this case is about, petty theft that just got a little overdrawn."

The strategy proved successful because the jury acquitted defendant of attempted robbery, finding him guilty only of burglary and petty theft. The

trial court found "defendant was on bail bond status at the time of [the] offense in this case."

The probation report reflected that defendant had numerous prior arrests and adjudications for committing theft-related crimes. Thus, the trial court sentenced him, in part, to the middle term of two years in state prison for the burglary.

Defendant appeals. His sole contention is the trial court erred when, during voir dire of prospective jurors, it solicited their assurances that, if chosen as jurors in this case, they would not engage in "jury nullification."

We disagree and shall affirm the judgment.

## DISCUSSION

### I

During voir dire, the trial court explained that those prospective jurors who were ultimately selected to serve on the jury would have "two fundamental duties"—(1) to "determine the facts. You will decide what happened or didn't happen in this case," and (2) to listen to the law given to the jurors by the court, and to "apply it to the facts as you have determined them and that's how you arrive at your verdict."

Defendant unsuccessfully objected when the trial court stated to the prospective jurors: "I need to have your assurance, if you will, without reservation that you will follow my instructions on the law in this case. . . . [¶] So I . . . need your assurance that you will not tell me then in essence, 'Well, that's not what the law is.' It's not a coulda, shoulda, woulda. 'I don't like that law so I'm not gonna follow it.' It's not an O.J. or anything like that. So another word for it is jury nullification. Another word, 'I don't like that law. I'm not gonna follow it.' If you don't like the law, yours, mine, agree our responsibility is [to] get the law changed, let the legislature [d]o what we can to get change. [¶] Our obligation if we live in a society of laws is not just to say, 'I don't like it. I'm not going to follow it,' in particularly in a courtroom such as this. I need to have your assurance you will follow the law as I state it to you and not substitute for what you think the law is or what the law should be. Anyone who just feels he or she couldn't do that? Wonderful."[1]

---

[1] We assume the trial court's use of the word "[w]onderful" implied that there was no overt sign of disagreement from the prospective jurors.

 This instruction was loosely derived[2] from then-section 8.5(b)(19) of the California Standards of Judicial Administration, which stated a trial court should include the following inquiry during voir dire of prospective jurors: "It is important that I have your assurance that you will, without reservation, follow my instructions and rulings on the law and will apply that law to this case. To put it somewhat differently, whether you approve or disapprove of the court's rulings or instructions, it is your solemn duty to accept as correct these statements of the law. You may not substitute your own idea of what you think the law ought to be. Will all of you follow the law as given to you by me in this case?"[3]

## II

Defendant's appellate counsel acknowledges that the trial court had, in counsel's words, "unquestioned" authority to tell the prospective jurors "to follow the law as instructed by the court." He also concedes that, in his words, the court had "no duty to instruct the [prospective jurors] as to their inherent power to nullify the law. While such power remains inherent in the jury system, it should not be encouraged or glorified." However, counsel complains the court went further, telling prospective jurors that, if selected to serve on the jury, they had, in his words, "no power of nullification, nor may they exercise it." This, he argues, "amounted to a[n] impermissible invasion of the province of the jury and a denial of the historic power of nullification held by all criminal juries." "By instructing the [prospective jurors] that they were forbidden to engage in nullification," he says, "the court removed from the Sixth Amendment the jury's role" as "the conscience of the community" and "the final barrier [against] unjust prosecutions and criminal convictions."

From a technical perspective, it could be said defendant's counsel overstates the import of the trial court's inquiry of prospective jurors. The court

---

[2] In embellishing the language of the standard, the trial court did not heed our high court's advice that "judges should closely follow the language and formulae for voir dire recommended by the Judicial Council in the Standards to ensure that all appropriate areas of inquiry are covered in an appropriate manner." (*People v. Holt* (1997) 15 Cal.4th 619, 661 [63 Cal.Rptr.2d 782, 937 P.2d 213].)

[3] Effective January 1, 2006, this section was renumbered and amended, so it now reads: "It is important that I have your assurance that you will follow my instructions and rulings on the law and will apply that law to this case. To put it somewhat differently, whether you approve or disapprove of the court's rulings or instructions, it is your solemn duty to accept as correct these statements of the law. You must accept and follow my instructions even if you disagree with the law. You may not substitute your own idea of what you think the law ought to be. Will all of you follow the law as given to you by me in this case?" (Cal. Stds. Jud. Admin., § 8.5(b)(21).)

did not tell them that they could not refuse to follow the law if selected as jurors; it simply sought their assurances that they would decline to second-guess the law and, instead, would follow the law as given to them by the court.

As a practical matter, however, some of the prospective jurors reasonably may have construed the inquiry as an admonition that, if selected to serve on the jury, they had no right of nullification, i.e., no authority to disregard the trial court's instructions on the law and, instead, to decide what they think is "right" under the circumstances, regardless of the law.

Thus, rather than "split hairs" over the wording of the trial court's inquiry, we will tackle a question left unanswered by the California Supreme Court in *Williams, supra,* 25 Cal.4th 441, i.e., whether a trial court may specifically instruct jurors they have no authority to render a verdict contrary to the law as provided to the jury by the court. (*Id.* at p. 459, fn. 8.)[4]

### III

What is referred to as "jury nullification" is a jury's "defiance of the law." (*U.S. v. Thomas* (2d Cir. 1997) 116 F.3d 606, 614.) It "can cover a number of distinct, though related, phenomena, encompassing . . . conduct that takes place for a variety of different reasons; jurors may nullify, for example, because of the identity of a party, a disapprobation of the particular prosecution at issue, or a more general opposition to the applicable criminal law or laws." (*Ibid.*)

An extensive discussion of jury nullification is contained in *Williams, supra,* 25 Cal.4th 441, which we summarize.

Jurors have a duty to follow the law as stated to them by the trial court. (*Williams, supra,* 25 Cal.4th at p. 449.) Nevertheless, although it is " ' "a power which they ha[ve] no right to exercise" ' " (*id.* at pp. 450, 460), jurors have "the ability to disregard, or nullify, the law." (*Id.* at p. 449.) "But the

---

[4] We recognize that the opinion in *Williams* stated the issue somewhat differently, namely, whether "a trial court may or must instruct a jury specifically that it has no *power* to render a verdict contrary to the law or the facts before it . . . ." (*Williams, supra,* 25 Cal.4th at p. 459, fn. 8.) We state the question another way because jurors unquestionably have the "power" to "nullify the law." (*Id.* at pp. 450, 457.) However, this does not mean jurors have the legal *authority* to do so. As persuasively explained by the decision in *Williams,* jurors have a legal duty to apply the rules of law given to them by the court's instructions. (*Id.* at pp. 448, 449, 451, 452, 455.) Stated another way, jurors are legally "obligated to follow the law." (*Id.* at p. 453.) Thus, while jurors have the " ' "power to misapply the law," ' " they do not have the right to do so. (*Id.* at p. 460.)

circumstance that the prosecution may be powerless to challenge a jury verdict or finding that is prompted by the jury's refusal to apply a particular law does not lessen the obligation of each juror to obey the court's instructions." (*Id.* at p. 451.)

Accordingly, "it is important not to encourage or glorify the jury's power to disregard the law. While that power has, on some occasions, achieved just results, it also has led to verdicts based upon bigotry and racism. A jury that disregards the law and, instead, reaches a verdict based upon the personal views and beliefs of the jurors violates one of our nation's most basic precepts: that we are 'a government of laws and not men.' [Citation.]" (*Williams, supra,* 25 Cal.4th at p. 459, fn. omitted.)

For this reason, the trial court "need not instruct the jury concerning its power to nullify the law . . . ." (*Williams, supra,* 25 Cal.4th at pp. 456, 457.)

Courts also have the authority to prevent jury nullification from occurring. (*Williams, supra,* 25 Cal.4th at p. 460.) Hence, when a trial court learns that a juror is refusing to follow the law, the court may discharge the juror because a juror who does so is " 'unable to perform his duty' within the meaning of Penal Code section 1089." (*Id.* at pp. 448, 463.)[5]

■ Since the court has the authority to discharge a juror who is engaging in juror nullification, it logically follows that the court can attempt to prevent an occurrence of juror nullification by informing prospective jurors at the outset that jurors have no authority to disregard the law, and by obtaining their assurance that they will not do so if chosen to serve on the jury.

■ We reject defendant's claim that "such a directive to the jury amounts to an unwarranted intrusion into the province of the jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution." Long ago, the United States Supreme Court held that the exclusion of prospective jurors because they "could not be trusted to 'abide by existing law' and 'to follow conscientiously the instructions' of the trial judge" does not violate a defendant's rights under the Sixth and Fourteenth Amendments. (*Lockett v. Ohio* (1978) 438 U.S. 586, 595–597 [57 L.Ed.2d 973, 983–985, 98 S.Ct.

---

[5] Penal Code section 1089 states in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, . . . the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors."

2954].) Indeed, a purpose of the Fourteenth Amendment is to ensure fairness in the adjudicatory process by guaranteeing the right to an impartial jury; hence, it is the " 'trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions' "; in other words, it is not within the legitimate province of a jury to engage in nullification, and it is " 'self evident' " that having jurors who intend to do so falls " 'woefully short of that . . . to which [a defendant is] entitled under the Sixth and Fourteenth Amendments.' [Citation.]" (*Morgan v. Illinois* (1992) 504 U.S. 719, 730, 732 [119 L.Ed.2d 492, 503, 504, 112 S.Ct. 2222].)

In sum, a "nullifying jury is essentially a lawless jury" (*Williams, supra,* 25 Cal.4th at p. 463) that is not, as defendant claims, "guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

Also unconvincing is his argument that an antinullification instruction is improper because it will result in "a direct denial of the historic power of nullification held by all criminal juries." The irony is that, as a practical matter, a jury has the power to nullify an antinullification instruction.

In fact, that is what occurred in this case. Defense counsel conceded to the jury that defendant was guilty of petty theft and that the burglary charge also "makes sense" in light of the evidence. However, defense counsel urged the jury to acquit defendant of the charge of attempted robbery because this was an insignificant theft "that just got a little overdrawn." Even though defendant's act of punching the store's security officer, in an unsuccessful attempt to thwart him from detaining defendant and regaining control over the items that defendant had unlawfully taken from the store, constituted attempted robbery as a matter of law (*People v. Estes* (1983) 147 Cal.App.3d 23, 26–28 [194 Cal.Rptr. 909]; accord, *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 221–224 [8 Cal.Rptr.3d 872]), the jury complied with defense counsel's request.

Having achieved what he requested from the jury, defendant obviously was not prejudiced by the antinullification inquiry because, in acquitting defendant of the charge of attempted robbery, the prospective jurors who were chosen to decide the case necessarily nullified the antinullification directive that had been given to them.

## DISPOSITION

The judgment is affirmed.

Sims, J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 2006, S146066.