Filed 11/12/13  P. v. Majewski CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN MICHAEL MAJEWSKI,<br><br>        Defendant and Appellant. | C071314<br><br>(Super. Ct. No. 11F5266) |

After a bench trial at which documentary evidence only was presented, the trial court convicted defendant Shawn Michael Majewski of seven counts of second degree

burglary (Pen. Code, § 459; counts 1, 2, 3, 5, 6, 13, 14)[1] and three counts of petty theft, a misdemeanor (§ 488; counts 4, 7, 8), and found a strike prior (§ 1170.12) to be true.

Sentenced to state prison, defendant appeals. He contends (1) insufficient evidence supports his conviction on counts 5, 6, 7, 8, and 13; and (2) the single larceny doctrine applies to bar his conviction on count 7 or 8. We reject defendant's contentions and will affirm the judgment.

**FACTS**

**Counts 1 and 2**

On September 10, 2010, employees at Strange and Son Fencing (SSF) locked up the business for the weekend. At 10:49 a.m. on September 11, 2010, the security company called an SSF employee to notify him that the alarm at the business had been triggered, but the employee missed the call. About 1:30 p.m. on September 12, 2010, the SSF employee went to the business and discovered that the alarm had been triggered, two holes had been cut in the perimeter fence, windows on two work trucks had been forced open, and a cell phone had been taken. Defendant's fingerprints were found on the windows of both trucks. Defendant was not an SSF employee and had no permission to be near the trucks.

**Counts 3**

On September 4, 2010, Rodney Rogers, who had parked and left his truck in front of a repair shop the day before, found that someone had entered the unlocked camper shell, pried open the rear sliding window of the truck, and stole a pair of binoculars and some change. Defendant's palm prints and fingerprint were found on the rear sliding window of the truck. Ten months later when defendant was interviewed, he did not recall

---

[1] Undesignated section references are to the Penal Code.

breaking into the truck or taking the binoculars but thought he could be responsible because he was " 'doing some stupid shit' " at the time.

**Count 4**

On September 18, 2010, a Crown Motors employee discovered an unlocked vehicle in the rear maintenance lot with a broken windshield.  Several  items were missing, including a GPS unit, bank checks, and hand tools.  DNA in blood found on the vehicle's center console matched defendant's DNA.  Ten months later when defendant was interviewed, he admitted that he might have taken the GPS unit but not the checks.

**Counts 5, 6, 7, 8, and 13**

Sometime between 9:00 p.m. on October 17, 2010, and the morning of October 18, 2010, a locked facility at Oasis Auto Repair was broken into.  The front passenger window of a Volkswagen Beetle was broken and a cell phone accessory was stolen (count 5).  A window of a Volkswagen Jetta was broken but nothing was taken (count 6).  About $4 in change was missing from an unlocked Volkswagen van (count 7).  A beach towel, sunglasses, and jumper cables were taken from an unlocked Volkswagen Passat (count 8).  The driver's side front door wing vent on an Isuzu Trooper was broken (count 13).  Within the storage compound behind the rear door of the shop but outside the business, defendant's fingerprint was found on a glass bottle containing cigarette butts.  Numerous cigarette butts were found on the ground near the bottle.  The owner of the business believed that the bottle had been recently overturned in search of a cigarette butt with some tobacco remaining.  In the storage yard, defendant's palm print was found on the sliding window of a Volkswagen Bus.  There was no evidence as to how long the Bus had been parked at Oasis.  Defendant was not charged with any crime related to the Bus, but it was parked near the other cars being repaired that were the subject of the charges.

About nine months later when defendant was interviewed, defendant stated that he had already been prosecuted for the Oasis burglary.  Defendant had been convicted of a vehicle burglary at another location, and a burglary that occurred at Oasis in September

3

2010 had been dismissed. Though he initially claimed he was there on only one occasion, defendant ultimately admitted that he had been at Oasis on two occasions.

**Count 14**

Sometime between 4:00 p.m. on October 20, 2010, and 7:00 a.m. on October 21, 2010, defendant broke into the rear windows of three vehicles parked at a Midas Auto Repair. Several items were missing from one of the vehicles, including two television screens, a DVD player, and a GPS unit. Defendant's palm prints were found on the "vehicles" but the documentary evidence did not clearly state which vehicle.

Nine months later when defendant was interviewed, he initially denied breaking into vehicles at Midas but admitted he probably walked through the lot. When confronted with evidence of his prints on the vehicles, defendant thought it was possible he " 'tried' " but it was also possible the windows were broken and he " 'leaned in to check.' "

Defendant stated that he "possibly" took property from the various car burglaries to his transient camps. He admitted that he had broken into " '[l]ess than 50' " vehicles.

**DISCUSSION**

**I**

Defendant contends insufficient evidence supports his convictions for the burglaries (counts 5, 6, and 13) and petty thefts (counts 7 and 8) at Oasis Auto Repair. We conclude sufficient evidence supports his convictions.

In reviewing an insufficient evidence claim, we review the whole record in the light most favorable to the judgment and determine whether any reasonable trier of fact could find the prosecution proved its case beyond a reasonable doubt. We do not reweigh the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Here, defendant's palm print on the Volkswagen Bus and his fingerprint on a bottle of discarded cigarette butts showed that defendant had been to Oasis. Defendant admitted that he had been to Oasis on two occasions. When defendant was prosecuted

4

for a burglary at another location, a September burglary at Oasis had been dismissed. As the trial court determined, the bottle appeared to the shop owner as having been recently overturned since there were cigarette butts on the ground near the bottle. The trial court observed that defendant was homeless and living in a transient camp, and that homeless and street people often look for cigarettes that are not completely smoked. The fact the bottle had been overturned recently was circumstantial evidence that defendant left his palm print on the Bus and fingerprint on the bottle on October 17. On October 21, 2010, at Midas, defendant's palm print was found on a car, windows on three cars had been broken, and property was taken from one. Defendant committed the Midas burglary in a nearly identical way and within days of the October burglaries/petty thefts at Oasis. Further, defendant admitted that he had broken into " '[l]ess than 50' " cars.

We reject defendant's claim that one reasonable interpretation of the evidence is that he left his palm print on the Volkswagen Bus and fingerprint on the bottle on another occasion when he was at Oasis. " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]" ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1054.) Sufficient evidence supports defendant's convictions for the burglaries and petty thefts at Oasis.

## II

Defendant contends the single larceny doctrine bars his conviction on count 7 or count 8. We disagree.

The single larceny doctrine "provides that when property properly belonging to different persons is taken at the same time and place, only one larceny will lie for the taking." (*People v. Marquez* (2000) 78 Cal.App.4th 1302, 1308-1309 (*Marquez*).)

Defendant was convicted of two counts of petty theft on October 17. He took $4 in change from an unlocked Volkswagen van belonging to Phillip Reedy (count 7) and a beach towel, sunglasses, and jumper cables from a Volkswagen Passat belonging to

Raelyn Haselhuhn (count 8). As relevant here, the elements of petty theft require that the defendant take possession of property of any value, no matter how slight, owned by someone else, without the owner's consent and with the intent to permanently deprive the owner of the property. (§ 484; *People v. Williams* (1946) 73 Cal.App.2d 154, 157; CALCRIM No. 1800.) Although defendant's takings of personal property from the victims' vehicles occurred at Oasis Repair during the same time, defendant took property from two victims and each separate taking required his intent to permanently deprive that victim of his or her property.

Defendant misplaces his reliance upon several cases. In *People v. Bauer* (1969) 1 Cal.3d 368, the defendant entered a home shared by several elderly women, tied them up, and stole several items, including a car in the garage. (*Id.* at p. 372.) *Bauer* held that section 654 barred punishment for both robbery and car theft. (*Bauer,* at pp. 375-378.) Although the single larceny doctrine applies to bar conviction, not punishment, *Bauer* discussed the doctrine, noting that the theft of several items at the same time, even from different owners, constitutes one offense. (*Id.* at p. 378.) Here, defendant's thefts did not occur simultaneously.

*People v. Smith* (1945) 26 Cal.2d 854 held that the defendant could be convicted of only one count of receiving stolen property for receipt in a single transaction property stolen from three different victims. (*Id.* at pp. 855, 859.) *Smith* noted that the gist of receiving stolen property is the purchase or receipt of the stolen goods with guilty knowledge and that the "particular ownership of the goods is not an element of the crime." (*Id.* at p. 859.) The offenses here were not receiving stolen property but instead petty theft, which requires a defendant's intent to permanently deprive the owner of property. *Smith* does not assist defendant.

*Marquez*, *supra*, 78 Cal.App.4th 1302 held that only one robbery against a single victim occurred where the defendant robbed a waitress of both her tip money and the

6

restaurant's money from the register.  (*Id.* at pp. 1304-1305, 1308-1309.)  *Marquez* is inapplicable since there are two victims here.

In *People v. Gardner* (1979) 90 Cal.App.3d 42, the defendant and his accomplice entered private property, shot five domestic hogs, and carried away the carcasses.  (*Id.* at pp. 45-46.)  The defendant was convicted of several crimes, including four counts of grand theft.  (*Id.* at p. 45.)  *Gardner* held that three of the four counts of grand theft had to be reversed because "in carrying out the single purpose and objective of wrongfully removing the hogs slain during the brief hunting episode, the defendant executed but one contemporaneous general plan and intention."  (*Id.* at p. 48; see *id*. at p. 46.)  *Gardner* is factually distinguishable here because defendant entered two different cars with the intent each time to steal personal property belonging to the owner of that particular vehicle.  Thus, defendant committed separate acts.

In *People v. Bailey* (1961) 55 Cal.2d 514, the defendant was convicted of grand theft of county welfare funds under false pretenses over 18 months, during which she received several payments from the same county.  *Bailey* approved of aggregating the value of the items taken from a single victim in a series of petty thefts where the takings are part of one general intent or single plan in order to determine the degree of theft.  (*Id.* at pp. 515, 518-519.)

Applying *Bailey, People v. Carrasco* (2012) 209 Cal.App.4th 715 held it was proper to aggregate damages caused by multiple acts of vandalism committed pursuant to one general impulse or plan to render the offense punishable as a felony, noting that the offense of vandalism does not focus on the number of owners whose property might have been damaged but instead focuses on the nature of the property as *not* the defendant's own property.  (*Id.* at pp. 719-720.)

To determine whether a defendant committed multiple petty thefts or a single grand theft, *Bailey* and *Carrasco* allow aggregation of the value of the property.  *Bailey* and *Carrasco* are of no assistance to defendant.

Here, the evidence shows two separate takings, not simultaneous takings from two victims.  Even though count 7 and count 8 occurred the same night at Oasis, defendant did not commit a single petty theft but rather two petty thefts, each with a separate intent. We conclude that the single larceny doctrine is inapplicable.

## DISPOSITION

The judgment is affirmed.


                                              _____RAYE_____, P. J.



We concur:



_____HULL_____, J.



_____MAURO_____, J.